**HORACE MANN INSURANCE, a foreign corporation, Plaintiff,**

v.

**William STARK and Alyssa M. Sherman, a minor, Defendants.**

No. 1:96–CV–134.

United States District Court, W.D. Michigan, Southern Division.

Nov. 4, 1997.

Lawrence Graham Ward, Brochert & Ward, Bloomfield Hills, MI, for Plaintiff.

Frank A. Fleischmann, Brookover & Fleischman, East Lansing, MI, for Defendant Alyssa M. Sherman.

D. Michael Dudley, East Lansing, MI, for Defendant William Stark.

## OPINION OF THE COURT ON BRIEFS SUBMITTED IN LIEU OF TRIAL

McKEAGUE, District Judge.

This case presents a controversy concerning the scope of coverage afforded by a homeowner's insurance policy. Plaintiff Horace Mann Insurance Company brought this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57. Plaintiff contends that, because of an exclusion provision in its policy issued to defendant William Stark, it has no duty to defend or indemnify him for any claim or legal action filed on behalf of his granddaughter, defendant Alyssa Sherman. Defendants assert that the exclusion provision does not operate to exclude coverage for actions filed on behalf of Alyssa. The parties have agreed to submit their dispute to the Court on briefs in lieu of trial.

## I. Findings of Fact

The parties have submitted to the Court a set of stipulated findings of fact, which the court adopts as follows:

At all pertinent times, the policy of insurance issued by plaintiff Horace Mann to defendant William Stark was in full force and effect, bearing policy number 84888585. The policy language in question provides an follows:

Coverage L provides:

"We, pay, to our limit, all sums for which an insured is liable by law because of bodily injury or property damage by an occurrence to which this coverage applies"

Coverage L does not apply to:

"1. Bodily injury to you, and if residents of your household, your relatives, and persons under the age of 21 in your care or in the care of your resident relatives".

Natalie Sherman is William Stark's daughter. Natalie, her two children, Alyssa and Connor, and her husband Brandon, lived with Brandon's parents until March 1995, when the family moved into a mobile home located in Potterville, MI. Natalie and Brandon had purchased the mobile home together in March 1995, and had jointly purchased furniture and appliances for it. In April 1995, as a result of marital difficulties, Natalie and her children moved in with her parents at 15850 Grand River Trail, Portland, MI. Natalie and Alyssa slept in the basement of the Starks' home and Connor slept in an upstairs bedroom.

On April 29, 1995, Alyssa was thrown off balance and fell off a lawn tractor driven by Mr. Stark. Her left hand went under the mower deck and was severely injured. Immediately prior to her injury, Alyssa was inside the house with her mother. No one knows how Alyssa got into the backyard. Alyssa had asked her grandfather for a ride on the tractor/mower. Mr. Stark would testify that he usually did not allow the children to ride the tractor/mower, but he felt sorry for Alyssa because of her family's marital problems. Natalie would testify that she was within 75 feet of Alyssa when the accident occurred. After the accident, Alyssa was brought inside to her mother. No adult other than Mr. Stark was outside when the accident occurred.

At the time of the accident, Natalie had moved her clothes, toiletries, a television, a VCR, and a breathing machine for her son's asthma to her parents' house. Natalie had lived in her father's home from the time she graduated from high school until she got married. She would testify that she registered to vote at that address at 18 years of age and never changed it, but that she does not vote. Natalie filed a change of address form with the postmaster shortly after she moved in with her parents in April 1995, which reflected an address change from Brandon's parents' home to the home of her parents. On this form, Natalie indicated that the move was "not temporary." At the time of the accident, Natalie received mail at her parents' home, including credit card bills. No change of address form has been produced which reflects Natalie's move from Brandon's parents' home to the mobile home in Potterville. Natalie's driver's license has the address of the Starks' home on the front, with three change of address stickers on the back, reflecting the addresses of Brandon's parents' home, the Potterville mobile home, and the apartment in which she presently resides. The driver's license does not indicate that Natalie ever changed her address back to her parents' home after it was changed to Brandon's parents' home.

In July 1995, Natalie and her children moved back into the Potterville mobile home because her husband had moved out. Natalie and the children continued to live at the mobile home until November 1995, when they moved into an apartment in Lansing, where they now reside. Natalie's divorce from Brandon became final on July 8, 1996.

## II. CONCLUSIONS OF LAW

### A. *The Exclusion Provision is Unambiguous.*

■ Defendants have asserted that the exclusion provision is ambiguous in two respects. First, defendants argue that it is unclear whether the second clause of the provision, "and if residents of your household," modifies only "your relatives," or if it

also modifies "and persons under the age of 21 in your care or in the care of your resident relatives." Second, defendants contend that the term "residents" itself is ambiguous under the facts and circumstances of this case. The Court finds that neither the provision as a whole nor the term "residents" is ambiguous.

"Ambiguous provisions in an insurance contract are construed against the insurer and in favor of coverage." *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 160, 534 N.W.2d 502 (1995), 449 Mich. 155, 534 N.W.2d 502, 504. However, courts must enforce the terms of the contract where clear, unambiguous language is used. *See id.* " 'An insurance contract is unambiguous if it fairly admits of only one interpretation.' " *Parameter Driven Software, Inc. v. Massachusetts Bay Ins. Co.*, 25 F.3d 332, 336 (6th Cir.1994) (quoting *State Farm Mut. Auto. Ins. Co. v. Snappy Car Rental*, 196 Mich. App. 143, 492 N.W.2d 500, 504 (1992)). Thus a provision is said to be ambiguous only when its words may reasonably be understood in different ways. *See Engle v. Zurich–American Ins. Group*, 216 Mich.App. 482, 487, 549 N.W.2d 589, 591 (1996). In this regard, "[t]erms in an insurance policy must be given their plain meaning and the court cannot 'create an ambiguity where none exists.' " *Heniser*, 449 Mich. at 161, 534 N.W.2d at 505 (quoting *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 206, 476 N.W.2d 392 (1991)).

Although the exclusion provision could probably have been drafted in a more precise manner, the Court finds that it is unambiguous. The phrase "and if residents of your household" modifies only the clause "your relatives," and cannot reasonably be interpreted to modify the remainder of the provision ("and persons under the age of 21 in your care or in the care of your resident relatives"). The plain and ordinary meaning of the provision is that coverage is excluded

for three categories of persons: (1) the insured; (2) persons who are resident relatives of the insured; (3) persons under age 21 in the care of either the insured or the insured's resident relatives. In interpreting a nearly identical policy exclusion provision, the Minnesota supreme court deemed the clause unambiguous. *See Reinsurance Ass'n of Minn. v. Hanks*, 539 N.W.2d 793, 796 (Minn. 1995) .[1] The court found that the third comma in the exclusion provision clearly separated "relatives" from the phrase "and any other person under the age of 21 in your care," concluding that "[i]f persons under 21 in the care of the insured were required to be residents of the insured's household to be excluded, the comma would be unnecessary." *Id.* at 796. Because it was not possible to interpret the provision in more than one way, the court held that "the exclusionary clause unambiguously excludes from coverage persons under the age of 21 in the care of the insured or resident relatives of the insured regardless of residency...." *Id.; see also Utica Fire Ins. Co. of Oneida County v. Gozdziak*, 198 A.D.2d 775, 775–76, 604 N.Y.S.2d 371 (N.Y.App.Div.1993) (holding that policy exclusion provision with nearly identical language unambiguously excluded coverage for persons under age 21 in care of policyholder).

The Court finds the reasoning of these cases persuasive. From a grammatical perspective, the insertion of the comma following "your relatives" suggests that the residency requirement applies only to that phrase. Moreover, interpreting the residency requirement as applicable to the entire provision would render the clause redundant and nonsensical. While it may be possible to conceive of situations in which a child would be in the care of an insured's resident relative but not him or herself a resident of the insured, in the overwhelming majority of cases such a child would necessarily also be a resident of the insured. Thus, imposing an additional residency requirement would make

1. The exclusion provision at issue in *Reinsurance Ass'n* excluded coverage "for bodily injury to you [the insured] and, if residents of your household, your relatives, and any other person under the age of 21 in your care or in the care of your resident relatives." *Reinsurance Ass'n*, 539 N.W.2d at 796. Thus the provision is identical to

the exclusion provision at issue here, except that the first comma is placed after the "and" instead of immediately before it. This minor difference does not affect interpretation of the provision: thus the Minnesota supreme court's analysis is relevant and helpful in resolving this dispute.

the provision redundant in almost all circumstances. The clearest and most natural reading of the provision is that the residency clause refers only to "your relatives." Keeping in mind that a court should not strain the meaning of contract terms beyond their plain and ordinary meaning in search for a subtle ambiguity, the Court finds that the phrase "and if residents of your household" unambiguously modifies only "your relatives." Therefore, persons under age 21 in the insured's care may be excluded from coverage under the insured's policy regardless of their residency.

■ Defendants also contend that the term "residents" is ambiguous. The policy does not define the term "residents." However, the fact that an insurance policy does not define a term does not alone establish that an ambiguity exists. *See Vanguard Ins. Co. v. Racine,* 224 Mich.App. 229, 568 N.W.2d 156, 158 (1997). In *Vanguard,* the court found that under the facts of that case, it was ambiguous whether the plaintiff's child was a "resident" of or "regularly resided" in the named insured's household so as to be excluded from coverage under a policy provision similar to the one at issue here. *See id.* at 159. The court found that both parties in the case had advanced plausible interpretations of the term residents as used in the policy exclusion provision and, therefore, it construed the provision against the insurance company. *See id.* The facts in *Vanguard,* however, are quite different from those presented here. In *Vanguard,* the insured and his three-year-old son were riding a lawnmower when the mower tipped and a fire broke out, causing the accidental death of the insured's son. *See id.* at 157–58. At the time of the accident, the insured and his ex-wife had joint legal custody of their son and, although the father did not have physical custody, the son visited at least every other weekend. *See id.* In the past, the father had maintained a separate bedroom for his

son and he was in the process of furnishing a separate room for him in his new house. *See id.* at 158.

The child's parents argued that residency is usually interpreted as being synonymous with the term "domicile" and, because one generally has only one domicile, their son was a resident of his mother's household at the time of his death and thus could not also have been a resident of his father's household. *See id.* at 159. The insurance company contended that it was possible to interpret the term "residents" to include relatives who periodically stay in a home indefinitely but maintain a legal domicile at some other location. *See id.* Under these facts, the *Vanguard* court concluded that it could not determine whether the son was a "resident" of the insured's household, or if he "regularly resided" at the insured's home. *See id.* The court found that although many cases use the terms "domicile" and "residency" synonymously, it was possible to define the terms differently. *See id.* Finding that such an ambiguity existed, the court construed the contract against its drafter and held that the policy covered the accidental death of the insured's son. *See id.*

In this case, the Court need not consider whether there is a distinction between "residing" and "regularly residing," which contributed to the *Vanguard* court's conclusion that the term "resident" was ambiguous. Further, the facts and circumstances of this case do not give rise to more than one reasonable interpretation of the term "residents." Unlike the situation in *Vanguard,* the insured in this case did not have any form of custody over Alyssa. Similarly, the insured had no "visitation" arrangement whereby he would alone house and care for Alyssa. Under Michigan law, the terms "domicile" and "residence" are legally synonymous except in special circumstances. *See Workman v. DAIIE,* 404 Mich. 477, 495, 274 N.W.2d 373, 379 (1979).[2] Moreover, although the Court rec-

---

**2.** In *Eastman v. University of Mich.,* 30 F.3d 670 (6th Cir.1994), the court distinguished between "residence" and "domicile" in ruling on the permissibility of the university's residency requirement for in-state tuition purposes. *See id.* at 672–73. The court stated: "Generally, an individual's 'domicile' is his true, fixed, and permanent home and principal establishment.... 'Residence,' in contrast, requires both physical presence and an intention to remain some indefinite period of time, but not necessarily permanently." *Id.* The court noted further that "[a]n individual consequently may have several residences but only one domicile." *Id.* at 673. Put-

ognizes that "resident" has no absolute fixed meaning, the term is not rendered ambiguous merely because its meaning may vary according to the circumstances. *See id.* The Court finds that under the facts and circumstances of this case, which are distinguishable from those in *Vanguard,* the term "residents" is not ambiguous.

### B. *Alyssa Sherman Was Not a Resident of William Stark's Household.*

■ Having found that the exclusion provision is unambiguous, the Court must next determine whether the clause operates to exclude coverage for the accident involving Alyssa. The initial question is whether Alyssa is a resident of William Stark's household. Because there is no question that Alyssa is a relative of Stark's, if she was a resident of his household at the time of the accident, then coverage is clearly excluded. Because Alyssa was and is a minor who at all times was in the custody and care of her mother, her residency must be determined by evaluating her mother's residency; that is, if Natalie Sherman was a resident of William Stark's household, so too was her daughter Alyssa.

■ Michigan law has established a four-factor balancing test to determine whether a person is a resident of an insured's household. *See Workman,* 404 Mich. at 496–97, 274 N.W.2d at 379–80. Under this test, a court must weigh: (1) the subjective or declared intent of the person of remaining in the household, either permanently or for an indefinite or unlimited length of time; (2) the formality of the relationship between the person and the members of the household; (3) whether they live in the same house or premises; and (4) whether the person has another place of lodging. *See id.* No single factor is determinative in this analysis. *See id.* at 497, n. 6, 274 N.W.2d 373. In making the residency determination, the following five factors may also be considered: (1) the person's mailing address; (2) whether the person maintains possessions at the insured's home; (3) whether the insured's address appears on the person's driver's license and other documents; (4) whether a bedroom is maintained for the person at the insured's home; and (5) whether the person is dependent upon the insured for financial assistance. *See Williams v. State Farm Mutual Auto. Ins. Co.,* 202 Mich.App. 491, 494–95, 509 N.W.2d 821, 823 (1993) (citing *Dairyland Ins. Co. v. Auto–Owners Ins. Co.,* 123 Mich.App. 675, 682, 333 N.W.2d 322 (1983)).

Applying the *Workman* and *Dairyland* factors, the Court finds that neither Alyssa nor her mother Natalie were residents of William Stark's household at the time of the accident. Natalie Sherman's intent was to stay at her parents' home only as long as was necessary to get her marital situation under control, as she had previously done. Natalie and her children had been staying at her parents' house for only a few weeks when the accident occurred, and she had no intention to stay either indefinitely or permanently. While the facts suggest that the relationship between Natalie, her parents, and her children was informal and friendly, this factor does not appear very relevant. Similarly, while it is obvious that they shared the same house for the period in question, this fact does not tip the balancing process in either direction. The mobile home in Potterville may fairly be characterized as another place of lodging for Natalie and her children. Natalie left most of her and her children's belongings at the mobile home, which she owned with her husband. She intended to return there once her marital problems were resolved and she did, in fact, move back to the mobile home in July 1995. Although Natalie changed her mailing address to that of her parents' home for convenience and because of her attorney's advice, this act does not necessarily indicate that she consid-

---

ting aside the obvious distinction between *Eastman* and this case, that *Eastman* did not involve interpretation of insurance contract terms, the fact that there may be a formal difference between the terms "residence" and "domicile" does not render "residents" ambiguous as it is used in the Horace Mann insurance policy. The word "resident" has a plain and ordinary mean-

ing. *See Hartong v. Makary,* 106 Ohio App.3d 145, 665 N.E.2d 704 (1995). Further, Michigan courts have developed a workable balancing test to determine resident status in the insurance context. Therefore, the term "residents" in the exclusion provision is unambiguous under the facts and circumstances of this case.

ered herself a resident of her parents' house. Indeed, the fact that she left most of her possessions at the Potterville home suggests that the change of address was done primarily for the sake of convenience while she temporarily stayed at her parents' house. The original address on Natalie's driver's license was that of her parent's home, but she changed it to reflect three different addresses, including the Potterville home. The facts indicate that Natalie and Alyssa slept in the basement of her parents' home and that she was not financially dependent on them.

Balancing all of these factors, the Court finds that Natalie and her children were temporarily staying with her parents when the accident involving Alyssa occurred; they were not residents of the Starks' home. This case involves a situation where a daughter returns to her parents' home to seek shelter and support during a time of marital crisis. There is no evidence that Natalie and her children were to remain permanently or even indefinitely at the Starks' home. Rather, Natalie's intention was to return to the Potterville home as soon as her marital problems were resolved—which is exactly what she did. Under these facts and circumstances, it cannot reasonably be said that Natalie or Alyssa was a resident of William Stark's household.

### C. Alyssa Sherman Was Not in the Care of William Stark at the Time of the Accident.

■ Although the Court has found that Alyssa was not a resident of Stark's household, this does not end the inquiry as to whether the insurance policy affords coverage to defendants for the accident. The Court has found that the exclusion provision unambiguously excludes coverage not only for residents of the insured's household, but also for persons under age 21 in the care of the insured. Thus even though Alyssa was not a resident of Stark's household, the exclusion provision excludes coverage for the accident if the Court determines that she was "in the care of" Stark at the time of the accident.

Plaintiff asserts that because Alyssa was riding on the lawnmower with her grandfa-

ther, she was under his care when the accident occurred. Relying chiefly on *Reinsurance Ass'n of Minn. v. Hanks,* 539 N.W.2d 793 (Minn.1995), and *State Farm Fire & Cas. Co. v. Odom,* 799 F.2d 247 (6th Cir.1986), plaintiff argues that Alyssa was under Stark's care because he had immediate supervision and control over her at the time of the accident. The facts of this case, however, are quite different from those presented in both *Hanks* and *Odom.* In *Hanks,* the child was mowing the lawn by herself while her father was inside the house during a regularly scheduled visit. *Hanks,* 539 N.W.2d at 794–95. The court found that the child was in her father's care at the time of the accident. *See id.* at 796. In contrast, when the accident occurred in this case, Alyssa's mother was inside the house (less than 75 feet away). The fact that Alyssa somehow managed to get out of the house does not lead to the conclusion that Natalie surrendered care of her to Stark. Moreover, Alyssa's grandparents did not have any general supervisory or custodial role with respect to Alyssa, unlike the child's father in *Hanks,* who had sole authority over her while she visited him on the weekends.

Plaintiff's reliance on *Odom* is similarly unavailing. In *Odom,* the child lived with her mother and her mother's boyfriend (the insured in that case). *See Odom,* 799 F.2d at 248–49. There was no question that the insured provided "significant physical care" to the child and that "[t]he group lived and functioned together as a family." *Id.* at 250. The child's parents in *Odom* argued that the phrase "in care of" was ambiguous because it could be interpreted as meaning either only legal care or as also including physical care. *See id.* at 249–50. The court rejected this argument, finding that the phrase could not reasonably be interpreted as meaning only legal care and that because the boyfriend so clearly exercised a great deal of physical care over the child, the child was in his care. *See id.* at 250. Here, again, there is no evidence that would suggest that Alyssa's grandfather had the kind of general supervisory control over Alyssa for her to be considered under his care at the time of the accident. Since Alyssa was not under Stark's care at the

time of the accident, the exclusion provision is not triggered on that basis and the policy affords coverage for actions filed on behalf of Alyssa relating to the accident.[3]

In sum, the Court finds:

1. The exclusion provision in the Horace Mann insurance policy issued to William Stark is not ambiguous. The provision excludes coverage for bodily injury to the insured, the insured's resident relatives, and persons under age 21 who are in the care of either the insured or the insured's resident relatives.

2. The term "residents" is not ambiguous. Michigan courts have established a multi-factor balancing test to determine resident status in the insurance context. Under this analysis, neither Natalie Sherman nor her daughter Alyssa were residents of William Stark's household at the time the accident occurred.

3. Alyssa was not under the care of Stark at the time of the accident. While Stark may have been exercising immediate control over her, Alyssa's mother was nearby and at all times retained general supervisory control over her daughter.

Accordingly, claims or actions filed on behalf of Alyssa relating to the lawnmower accident do not fall within the scope of the exclusion provision. A judgment order consistent with this opinion shall issue forthwith.

---

**3.** The Court recognizes that a panel of the Michigan Court of Appeals recently examined the phrase "in care of" and found it to be ambiguous. *See Henderson v. State Farm Fire & Cas. Co.*, 225 Mich. App. 703, 572 N.W.2d 216 (1997). This Court did not address whether the phrase is ambiguous because the parties here did not make such an argument (although defendants alluded to the possibility that the phrase might be interpreted in more than one way). In any event, the Court finds that the phrase is unambiguous under the facts and circumstances of this case for the same reason that the Sixth Circuit found the phrase unambiguous in *Odom* —because there is not more than one reasonable interpretation of the phrase here. To the extent that this conclusion is inconsistent with the reasoning in *State Farm*, the Court respectfully declines to adopt that court's analysis. The Court disagrees with *State Farm's* conclusions, which are neither consistent with the facts nor the cases cited therein.