**INDIANA FARMERS MUTUAL INSURANCE COMPANY, Appellant–Plaintiff,**

v.

**Richard L. IMEL and Carrie Smith, as parent and as guardian of A.T., a minor, Appellee–Defendant.**

No. 39A01–0404–CV–162.

Court of Appeals of Indiana.

Nov. 10, 2004.

**300**

Rodney L. Scott, New Albany, IN, Attorney for Appellant.

Mary Jean Stotts, Joas & Stotts, Madison, IN; Nancy C. Jacobs, Jenner, Auxier & Jacobs, LLP, Madison, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Indiana Farmers Mutual Insurance Company (Indiana Farmers), appeals the trial court's grant of summary judgment in favor of Appellees–Defendants, Richard L. Imel (Imel) and Carrie Smith (Smith), the latter as parent and as guardian of A.T., a minor, with regard to their claim for liability coverage under an insurance policy.

We affirm.

### ISSUES

Indiana Farmers raises two issues on appeal, which we consolidate and restate as the following issue: whether the trial court erred in concluding that the residency requirement contained in the liability coverage exclusion provision of Indiana Farmers' insurance policy applies only to a policyholder's relatives and not to persons in the policyholder's care or persons in the care of the policyholder's relatives.

### FACTS AND PROCEDURAL HISTORY

Smith is the mother and legal guardian of A.T., a minor born in 1994. She divorced A.T.'s father, David Tinker (Tinker), prior to A.T.'s birth. Ever since he was an infant, by agreement, A.T. was allowed to stay with Tinker's mother, Marilyn Imel (Marilyn), and stepfather, Imel (collectively, the Imels), on their farm, located in Madison, Indiana. A.T. typically visits the Imels twice each month, and his visits have included both single day visits and overnight weekend visits.

While A.T. stays at the Imels' farm, his mother typically does not attend, and Marilyn then becomes A.T.'s primary caregiver. During his visits, A.T. has to abide by rules set by the Imels, who have full authority to care for him and discipline him as needed. Furthermore, A.T. brings his own clothes and favorite toys with him. When spending the night, he stays in the Imels' guest bedroom, used by all of the Imels' guests.

On March 28, 2002, A.T. was visiting the Imels for the weekend. That day, Imel, accompanied by A.T., walked over to the barn where Imel planned to move a cow with the assistance of Richard Miller. At that time, Imel was supervising A.T. While attempting to load the cow into the trailer, the cow behaved unexpectedly, running towards the corner of the barn where Imel had instructed A.T. to wait. The cow ran over A.T., resulting in bodily injury.

At the time of the accident, Imel carried an insurance policy with Indiana Farmers, which provided liability and medical payment coverage. The liability coverage was limited by the following provision:

2. Additional Exclusions That Apply Only to Coverage L—Coverage L does not apply to:

a. "bodily injury" to "you", and if residents of "your" household, "your" relatives and persons in "your" care or in the care of "your" resident relatives.

(Appellant's App. p. 57). On December 9, 2002, Indiana Farmers filed a Complaint for Declaratory Judgment, requesting the trial court to declare that there was no duty to defend or indemnify Imel against a liability claim as there was no coverage for A.T.'s bodily injuries because he was in the Imels' care at the time of the accident and thus excluded from coverage. Subsequently, on June 23, 2003, Indiana Farmers filed a Motion for Partial Summary Judgment with respect to the policy's liability coverage. Indiana Farmers did not contest coverage under the medical payment portion of Imel's policy. On July 21, 2003, Smith filed a Response to Indiana Farmers' Motion for Partial Summary Judgment and, at the same time, filed a Cross–Motion for Summary Judgment, requesting the trial court to find that coverage existed under both the liability and medical payments portions of the insurance policy. On January 27, 2004, all parties presented arguments during the hearing on the motions for summary judgment. Thereafter, on February 13, 2004, the trial court issued its Order, granting Smith's cross-motion for summary judgment and denying Indiana Farmers' motion for partial summary judgment.

Indiana Farmers now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Indiana Farmers contends that the trial court erred by denying its motion for partial summary judgment. Specifically, they first maintain that the application of the liability exclusion provision of the policy does not require A.T. to be a resident of the Imel household. Instead, they assert that the policy excludes coverage for bodily injury to A.T. regardless whether he is a resident of the Imels' household, since he was in the care of Imel at the time of the accident. Furthermore, Indiana Farmers claims that even if A.T. was required to be a resident for the exclusion provision to be triggered, the trial court erred in concluding that he was not a resident because the facts support a finding of dual residency for the purpose of insurance coverage.

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 783 (Ind.Ct. App.2002), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v.*

*Indian Heights Volunteer Fire Dep.'t, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

■ Insurance contracts are subject to the same rules of construction as are other contracts. *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind.Ct.App.2004). Generally, the construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Mid State Bank v. 84 Lumber Co.*, 629 N.E.2d 909, 914 (Ind.Ct.App.1994). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract. *Id.* Consequently, when summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.*

## II. *Liability Coverage*

### A. *Exclusion Language*

■ Indiana Farmers contend that the trial court erred in granting summary judgment to Imel and Smith. In particular, the insurance company alleges that the application of the policy's exclusion of liability provision clearly does not require A.T. to be a resident of the Imel household. Rather, they claim it to be sufficient for A.T. to be in Imel's care in order for Indiana Farmers to deny coverage under the liability section of the policy.

■ As stated before, the policy language at issue reads as follows:

2. Additional Exclusions That Apply Only to Coverage L—Coverage L does not apply to:

    a. "bodily injury" to "you", and if residents of "your" household, "your" relatives and persons in

"your" care or in the care of "your" resident relatives.

(Appellant's App. p. 57). With regard to the interpretation of the provisions of an insurance policy, we acknowledge that some special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insureds. *See Jackson*, 804 N.E.2d at 158. In this light, we have held that if a contract is clear and unambiguous, the language therein must be given its plain meaning. *Vann v. United Farm Family Mut. Ins. Co.*, 790 N.E.2d 497, 502 (Ind.Ct.App.2003), *trans. denied.* On the other hand, where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is to be viewed from the standpoint of the insured. *Jackson*, 804 N.E.2d at 158. Furthermore, an exclusionary clause must clearly and unmistakably express the particular act or omission that will bring the exclusion into play. *Vann*, 790 N.E.2d at 502.

Here, to aid us in our review of the policy language, the parties do not proffer and our research did not reveal any reported decisions in Indiana addressing the issue facing us today. As such, the question presented by Indiana Farmers is a matter of first impression in this jurisdiction. Nevertheless, in support of their respective arguments, Indiana Farmers, Smith, and Imel direct us to the same three cases of foreign jurisdiction. The common denominator of these referenced cases with the instant case is the close similarity in the insurance policy's language. The liability exclusion provision in the foreign jurisdiction cases reads as: liability coverage does not apply to "bodily injury to you, *and if residents of your household, your relatives, and persons under the age of 21 in your care or in the*

*care of your resident relatives.*" (emphasis added).

Interpreting this exclusion, the Minnesota supreme court in *Reinsurance Association of Minnesota v. Hanks,* 539 N.W.2d 793 (Minn.1995), noted that the third comma in the exclusion clearly separates the word "relatives" from the words "any other person under 21 in your care ..." *Id.* at 796. If persons under 21 in the care of the insured were required to be residents of the insured's household to be excluded, the comma would be unnecessary. *Id.* In its analysis, the supreme court relied on *Utica Fire Ins. Co. of Oneida County v. Gozdziak,* 198 A.D.2d 775, 604 N.Y.S.2d 371 (N.Y.App.Div.1993).

In *Gozdziak,* a young boy's parents were divorced and he lived with his mother. *Id.* at 371. While visiting his father's house, he was injured. *Id.* The father had a household insurance policy containing an exclusionary clause identical to the one in *Hanks.* The *Gozdziak* court concluded that "[t]he exclusion sets forth three distinct classes of individuals, injury to whom is not covered: the policyholder; the policyholder's resident relatives; and minors in the care of the policyholder or his resident relatives, *irrespective of the minors' residence.*" *Id.* (emphasis in original). The court found that the final comma after the word "relatives" would be unnecessary if the phrase "if residents of your household" was intended to modify the words "persons under 21 years of age." *Id.* at 372.

Finally, in *Horace Mann Insurance v. Stark,* 987 F.Supp. 562 (W.D.Mich.1997), the *Stark* court, being faced with the exclusionary language, stated that the phrase "and if residents of your household" modifies only the clause "your relatives," and cannot reasonably be interpreted to modify the remainder of the provision. *Id.* at 565. From a grammatical perspective, the court

suggested that the insertion of the comma following "your relatives" indicated that the residency requirement applied only to that phrase. *Id.* The court opined that interpreting the residency provision as applicable to the entire provision would render the clause redundant and nonsensical. *Id.*

However, in the case at hand, the exclusion language is distinguishable from these cases in that no punctuation follows the phrase "your relatives." Rather, only the phrase "and if residents of your household" is offset by commas, with the remainder of the provision lacking all punctuation. Although Indiana Farmers readily concedes the grammatical difference in policy language, it nonetheless encourages us to close our eyes to the missing comma and follow the precedent constructed in *Hanks, Gozdziak,* and *Stark.* We decline this invitation.

While each court in *Hanks, Gozdziak,* and *Stark* found the inclusion of the third comma, after the words "your relatives," to be central to the clarification of the exclusionary provision, we, on the other hand, find the explicit absence of the third comma to be pivotal to the interpretation of the provision at issue. The courts in each of the three referenced cases noted that if the residency requirement were intended to apply to all of the categories of excluded people, as opposed to relatives only, then the third comma would not be necessary. We agree with Smith's argument that, as the exclusionary provision of the policy here does not contain the third comma following the words "your relatives," the reasonable interpretation is that the residency requirement modifies all three categories of individuals, *i.e.,* relatives, persons in the policyholder's care, and persons in the care of the policyholder's resident relatives. Thus, based on the punctuation applied by Indiana Farmers, we conclude

that the exclusionary provision's structure requires A.T. to be a resident of the Imel household in order for Indiana Farmers to deny liability coverage.

We further disagree with the *Stark* court's opinion in that the applicability of the residency requirement to all three categories would render the clause redundant and nonsensical. *Stark*, 987 F.Supp. at 565. The mere fact that a provision might be redundant and cover a very unusual situation does not prevent the situation to be provided for in an insurance policy. As such, the case at bar is a vivid example of the importance of careful punctuation where the slight placement, or non-placement, of a comma can yield widely different results.

Moreover, keeping in mind that we have to construe an insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases, or paragraphs, our interpretation of the exclusionary clause is supported by the policy's definition of "insured." *See RMJ Enterprises, Inc. v. Scottsdale Ins. Co.*, 808 N.E.2d 159, 163 (Ind.Ct.App. 2004), *reh'g denied*. Indiana Farmers' insurance policy defines "insured" as: "(a) you; (b) your relatives if residents of your household; (c) other persons in your care or in the care of your resident relatives if residents of your household." (Appellant's App. p. 49). The explicit addition of "if residents of your household" in the third category thus clearly reinforces our interpretation of the exclusionary provision.

Accordingly, we conclude that the policy unambiguously excludes coverage for three distinct classes of individuals, injury to whom is not covered under the policy: the policyholder; the policyholder's resident relatives; and persons in the policyholder's care or in the care of the policyholder's resident relatives, if resident in the policyholder's household. Therefore, since Imel concedes that A.T. was in his care at the time of the incident, we need to analyze whether A.T. was a resident in Imel's household in order for the exclusion provision to apply.

### B. Residency Requirement

■ With regard to the residency requirement, Indiana Farmers specifically alleges that A.T. maintained a dual residency, both with his mother, Smith, and his grandparents, the Imels. We do not find the term resident, as used in the policy, to be ambiguous on its face. However, because the parties left the term resident undefined, we must apply Indiana common law to determine its meaning. As a general principle, "resident" has no fixed or precise meaning in the law. *Jones v. Western Reserve Group/Lightning Rod. Mut. Ins. Co.*, 699 N.E.2d 711, 714 (Ind.Ct. App.1998), *reh'g denied*. In determining residency status under an automobile liability insurance contract, established case law has developed a three-fold test. *See, e.g., Indiana Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App. 2000). We will apply the same factors to address the residency issue in the instant personal liability insurance policy. Thus, in order to be a resident of the Imel household, we consider the following elements: 1) whether the claimant maintained a physical presence in the insured's home; 2) whether he had the subjective intent to reside there; and 3) the nature of his access to the insured's home and its contents. *Jones*, 699 N.E.2d at 714.

■ In addition, the fact-finder must consider all of the evidence indicative of the claimant's living habits. *Aetna Casualty & Sur. Co. v. Crafton*, 551 N.E.2d 893, 895 (Ind.Ct.App.1990). These factors should be considered in the context in which the term resident is used and the purpose of the instrument in which the term is employed. *Jones*, 699 N.E.2d at

715. Furthermore, we note that in construing the term resident in insurance policies, it is given its broad meaning in extension cases, and is construed narrowly in exclusion cases. *Crafton,* 551 N.E.2d at 897.

■ With regard to A.T. maintaining a physical presence in Imel's household, testimonial evidence indicates that his status was more that of a temporary visitor rather than that of a resident. The record reflects that at the time of the accident, A.T. lived with his mother in Hanover, Indiana, and attended school at Southwestern Elementary School. In her deposition, Smith testified that ever since A.T. was three years old, he regularly visited the Imels about twice a month, from Friday evening until Sunday afternoon. However, Marilyn clarified that when the Imels are out of town on A.T.'s scheduled weekend or Smith has a family function or outing, the weekend at the Imels' farm would be skipped and the lost time would not be made up. Furthermore, Smith stated that during these overnight visits, A.T. would take his favorite toys, pillow, and clothes. Although the evidence indicates that toys were present in the Imels' household, it is clear that these were for the general use of all the Imels' grandchildren.

Turning to A.T.'s subjective intent to reside in the Imel's household, the record shows that Marilyn considers Smith to be A.T.'s primary caregiver. She also testified that she defers to Smith on issues of discipline and medication. All parties stated in their deposition testimony that they consider A.T. to be a resident of Smith's household while his temporary stays at the Imels' farm are nothing more than family visits.

Finally, we analyze the nature of A.T.'s access to Imel's home and its contents. The record indicates that during his visits A.T. sleeps in the guest bedroom, which is used by all the Imels' children and grandchildren, not exclusively by A.T. Even though he has access to all the parts of the house a normal eight-year-old child would have access to, the evidence establishes that A.T. needs to abide by certain rules. But, like any guest, he was free to move about the interior of the home. In sum, considering all the factors indicative of A.T.'s living habits, we conclude that frequent and prearranged visits of an eight-year-old grandchild with his paternal grandparents do not amount to a change of residency from his mother's home to his grandparents'.

Nevertheless, Indiana Farmers now attempts to circumvent A.T.'s lack of residency at the Imel household by asserting that his living situation supports a dual residency, both at Smith's residence and the Imels'. We find Indiana Farmers' argument to be unavailing. Although we have previously held that "at least for some purposes a person may have more than one residence," we are mindful that the case at bar involves an exclusion provision, and accordingly, the term resident should be constructed narrowly. *See Jones,* 699 N.E.2d at 716; *Crafton,* 551 N.E.2d at 895. Considering that A.T. is eight years old, his primary residence is logically with his mother. Furthermore, our review of A.T.'s visits to the Imel farm, in light of all the evidence designated to the trial court, does not mandate a finding of dual residency.

Therefore, based on the clear and unambiguous language of the insurance policy, we conclude that there are no genuine issues of material fact. *See American Family Mut. Ins. Co.,* 764 N.E.2d at 783. Viewing all the evidence before us, we find that A.T. is not a resident of Imel's household, even though he was in Imel's care at the time of the accident. Accordingly, A.T.'s bodily injuries are not excluded

from coverage under the liability provisions of Indiana Farmers' policy. Consequently, the trial court did not err by denying Indiana Farmers' motion for partial summary judgment and granting Smith's and Imel's motion for summary judgment.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted summary judgment as a matter of law in favor of Smith and Imel and denied Indiana Farmers' motion for partial summary judgment.

Affirmed.

CRONE, J., and VAIDIK, J., concur.