

FILED

Nov 28 2018, 9:06 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lewis S. Wooton
Wooton Hoy, LLC
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Mark K. Phillips
Michael K. Phillips
Phillips and Phillips, P.C.
Boonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

United Farm Family Mutual
Insurance Company,

*Appellant-Plaintiff,*

v.

Stacy B. Matheny, Earl R.
Matheny, and the Estate of
Phillip Preston Chase by and
through Ana Marie Chase,
Personal Representative of the
Estate of Phillip Preston Chase,

*Appellees-Defendants*

November 28, 2018

Court of Appeals Case No.
18A-CT-515

Appeal from the Perry Circuit
Court

The Honorable Lucy Goffinet,
Judge

Trial Court Cause No.
62C01-1702-CT-99

**May, Judge.**

[1]     United Farm Family Mutual Insurance Company ("United") appeals the trial

court's denial of its motion for summary judgment. United contends the trial

court's conclusion Stacy Matheny ("Stacy") and Earl Matheny ("Earl") lived in separate residences was in error. We reverse and remand with instructions.

# Facts and Procedural History[1]

[2] Stacy is Earl's son. Stacy lives in an apartment on the second floor of Earl's house. Stacy has lived under the same roof as his father since approximately 2000, excepting some time Stacy spent in prison. While Stacy was imprisoned and after Earl's wife died, Earl closed off access between the upstairs and downstairs of his home and rented the second floor to other people as an apartment. Thereafter, access to the upstairs apartment was via two separate entryways at the front and the back of the house. The upstairs apartment consisted of two bedrooms, a living room, and space for a kitchen; however, no appliances were ever installed to make the kitchen area functional for meal preparation.

[3] To gain access to the downstairs where Earl lived, one must enter from outside and have a key. Stacy and his siblings all had keys to the part of the house where Earl lived. Stacy usually ate breakfast and lunch with Earl in Earl's living area. The two men also typically ate dinner together. Stacy was

---

[1] We heard oral argument on this matter on October 29, 2018, at South Dearborn High School in Aurora, Indiana. We commend counsel for their oral advocacy and for participating in the post-argument discussion with the audience. We especially thank the students and school personnel of Dearborn High School for their gracious hospitality and thoughtful post-argument questions.

unemployed and did not have a driver's license. Earl paid Stacy's living expenses, did not collect rent from him, and transported him on errands.

[4] Earl had several long guns and a handgun. When Stacy was released from prison, Earl thought Stacy was not allowed to live in a house with guns. Earl stored his long guns off-site but kept his handgun with him for personal protection. Earl kept the gun under his pillow and took it with him in a bag when he travelled.

[5] Earl had three mobile homes that he rented to other people. Pete Paris rented one of the homes. Phillip Chase frequently visited Paris; however, both Earl and Stacy had told Chase he was not welcome on the property. Earl and Stacy did not want Chase there because Chase allegedly manufactured drugs on the property.

[6] On March 14, 2016, Earl and Stacy were headed into town when Earl noticed Paris had accumulated more than thirty bags of trash at the back of the mobile home. Earl and Stacy stopped so Earl could tell Paris to clean it up. When Earl pulled up to the mobile home, Stacy noted Chase's car was beside the home. Paris came outside, and Stacy told him to have Chase come out to talk. As they were waiting for Chase, Earl was worried the men would fight. When Chase came out, he and Stacy moved toward the back of Earl's truck to talk. Stacy shot Chase in the head with Earl's handgun. Chase died. Earl did not know when or how Stacy obtained his gun.

[7]　On May 13, 2016, Chase's Estate ("Estate") sued Stacy and Earl for wrongful death alleging Stacy had "knowingly or intentionally sho[]t" Chase, (App. Vol. II at 14), and Earl had been negligent in storing and safe-keeping the handgun and in not controlling his son when a special relationship existed between the men. This special relationship, the Estate alleged, arose from the fact Earl knew Stacy had a history of violent and criminal activity, had been in prison for shooting someone, had an "emotional and/or mental disturbance," (*id*. at 15), and was prohibited from owning or using a handgun because he is a convicted felon.

[8]　Earl had homeowner's insurance with United, and United represented Earl in the negligence claim; however, on February 13, 2017, United filed a complaint for declaratory judgment alleging it was not obligated to defend or indemnify Earl or Stacy in the wrongful death suit because the policy included an exclusion for damages that were the result of a criminal act.

[9]　Earl's insurance policy with United stated:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

(*Id*. at 49.)

[10] The policy contains the following pertinent definitions:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

\* \* \* \* \*

3. "Insured" means you and residents of your household who are:

    a. Your relatives; or

    b. Other persons under the age of 21 and in the care of any person named above.

\* \* \* \* \*

4. "Insured location" means:

    a. The "residence premises";

    b. The part of other premises, other structures and grounds used by you as a residence and:

        (1) Which is shown in the Declarations; or

        (2) Which is acquired by you during the policy period for your use as a residence;

        \* \* \* \* \*

    h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    a. "Bodily injury"; or

    b. "Property damage."

(*Id*. at 37.)

[11] The policy also includes exclusions that limit coverage in certain circumstances:

We do not pay for loss to property covered by this policy, "bodily injury" or "property damage" intended

by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of any "insured." This exclusion applies even if:

> (1) Such "insured" lacks the mental capacity to govern his or her conduct;

> (2) Such loss, "bodily injury" or "property damage" is of a different kind or degree than intended or reasonably expected;

> (3) Such loss, "bodily injury" or "property damage" is sustained by a different person than intended or reasonably expected; or

> (4) Such loss or "property damage" is caused by or results from an intentional or criminal act of any person to whom an "insured" has rented, leased, loaned or entrusted the property, unless the "insured" has no knowledge of or reason to suspect such intentional or criminal activity.

This exclusion applies regardless of whether or not such "insured" is actually charged with, or convicted of, any crime.

(*Id*. at 52.)[2]

---

[2] United's brief indicates this exclusion is in Section II, number 1, subpart "o"; however, at the citation United provides, "Appellant's App. Vol. 2, p. 52," (Br. of Appellant at 9), the exclusion listed is in Section II, number 1, subpart "n." We believe this to be a scrivener's error.

On September 8, 2017, United filed a motion for summary judgment, claiming that because Stacy, as a relative residing in Earl's household, was an insured party who intentionally shot Chase, the damages claimed by the Estate were excluded from coverage. The Estate filed a response and objected, alleging that, because Stacy was not a resident of Earl's household, coverage for Earl was not excluded. On January 9, 2018, the trial court denied United's motion for summary judgment, stating:

> COMES NOW THE COURT after review of the Motion for Summary Judgment filed by the Plaintiff's [sic], after review of testimony and exhibits presented at hearing on this motion, after review of submissions filed by the parties, and the court being duly advised in the premises now FINDS as follows:
>
> 1. The Plaintiff's [sic] issued a home insurance policy to Defendant, Earl R. Matheny.
>
> 2. Defendant, Stacy B. Matheny, is the adult son of Defendant, Earl R. Matheny.
>
> 3. Defendant, Stacy B. Matheny, was not listed as an insured party under the home insurance policy that was issued to Defendant Earl R. Matheny by the Plaintiff's [sic].
>
> 4. The Defendant, Earl R. Matheny, has repeatedly stated that he lives alone.
>
> 5. Testimony revealed that the Defendant, Stacy B. Matheny, lived in his own apartment alone.

6. Testimony revealed that the apartment of Defendant, Stacy B. Matheny, had no access to the home of Defendant, Earl R. Matheny.

7. Testimony revealed that the only access Defendant, Stacy B. Matheny, had to the home of Defendant, Earl R. Matheny, was through a locked door.

8. Testimony revealed that the apartment in which Defendant, Stacy B. Matheny, had been living on March 14, 2016 had previously been rented to third parties and had not been used as living quarters by Defendant, Earl R. Matheny, for many years.

9. The apartment of the Defendant, Stacy B. Matheny, was sealed off from the home of Defendant, Earl R. Matheny.

10. The apartment of the Defendant, Stacy B. Matheny, had its own outside entrance separate from that of the Defendant, Earl R. Matheny.

THE COURT NOW CONCLUDES AS FOLLOWS:

1. The homeowner's policy issued to the Defendant, Earl R. Matheny, listed only the Defendant, Earl R. Matheny, as an insured party.

2. The Defendant, Earl R. Matheny, lived separate from the Defendant, Stacy B. Matheny[,] in separate living quarters.

3. The parties intended to live separately.

> 4. The Plaintiff's Motion for Summary Judgment should
> be denied.
>
> IT IS THE ORDER OF THIS COURT that Plaintiff's Motion
> for Summary Judgment is DENIED.

(Appealed Order at 1-2.) United filed a motion requesting certification of that order for interlocutory appeal. The trial court granted that motion, and we accepted jurisdiction.

## Discussion and Decision

[13] We review summary judgment using the same standard as the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016). All facts and reasonable inferences are construed in favor of the non-moving party. *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 137 (Ind. 2016). Where the challenge to summary judgment raises questions of law, we review them *de novo*. *Rogers*, 63 N.E.3d at 320.

[14] When the trial court makes findings and conclusions in support of its order regarding summary judgment, we are not bound by such findings and conclusions, but they aid our review by providing reasons for the decision. *Allen Gray Ltd. P'ship IV v. Mumford*, 44 N.E.3d 1255, 1256 (Ind. Ct. App. 2015). We will affirm a summary judgment order on any theory or basis found in the record. *Id.*

[15] When interpreting an insurance policy, we give plain and ordinary meaning to language that is clear and unambiguous. *Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind. 1998). Policy language is unambiguous if reasonable persons could not honestly differ as to its meaning. *Id.* To this end, we look to see "if policy language is susceptible to more than one interpretation." *Id.* If an insurance policy contains ambiguous provisions, they are construed in favor of the insured. *Id.* "This strict construal against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer. The insurance companies write the policies; we buy their forms or we do not buy insurance." *Id.*

[16] United argues it has no obligation to defend or indemnify either Stacy or Earl because Stacy was an insured party under the policy and, therefore, the exclusion for an intentional, criminal act applies.[3] Although Stacy was not a named insured on the policy, United argues he was an insured because the policy defined "insured" as relatives of the named insured who are also "residents in [the named insured's] household." (App. Vol. II at 37.)

[17] When, as here, the parties' policy leaves the term "resident in your household" undefined, we apply Indiana common law to determine its meaning. *Indiana*

---

[3] Because the insurance policy states the exclusion applies to "the intentional or criminal acts or omissions of *any* 'insured[,]'" this exclusion would apply to United's obligation or lack thereof for both Stacy and Earl even though only Stacy committed a criminal act, provided Stacy is considered an insured party. *See Holiday Hosp. Franchise, Inc. v. Amco Ins. Co.*, 983 N.E.2d 574, 581 (Ind. 2013) (obligation to defend or indemnify is relieved as to all insured parties even when exclusionary act committed by only one insured).

*Farmers Mut. Ins. Co. v. Imel,* 817 N.E.2d 299, 304 (Ind. Ct. App. 2004). In determining residency status under an automobile liability insurance contract, Indiana case law has developed a three-fold test, which has been applied to questions of residence arising in a personal liability insurance policy. *Id.* To determine whether someone is a resident of a household, we consider: 1) whether the claimant maintained a physical presence in the insured's home; 2) whether he had the subjective intent to reside there; and 3) the nature of his access to the insured's home and its contents. *Id.* When there is a question of fact, the factfinder must consider all of the evidence indicative of the claimant's living habits. *Id.*

[18] Alleging Stacy was a resident in Earl's household, United argues that – because Stacy obviously had a physical presence in Earl's home and obviously had access to Earl's home – the only prong of the test at issue is the subjective intent prong. United maintains Earl and Stacy subjectively intended for Stacy to be a resident of Earl's household because Stacy received all his mail at the single address for the home and Earl paid all Stacy's expenses. Stacy paid no rent. Earl stated several times that Stacy lived with him. Maybe most important, Earl, without being directed to do so by law enforcement, removed all the long guns from the downstairs because he believed Stacy, as a felon, could not live in a house with guns. Earl admitted he nevertheless kept the handgun for personal protection.

[19] Unable to find Indiana cases wherein residency was disputed when a party lived full-time under the same roof as the insured,[4] United turned to cases from other jurisdictions. United first cites *Row v. United Services Automobile Association*, 474 So.2d 348 (Fla. Ct. App. 1985), wherein a son lived in an apartment complex inhabited and owned by his father. The Florida Court of Appeal noted that "what constitutes residency in a household is a mixed question of law and fact to be determined from the facts of each individual case." *Id*. at 349. However, as the facts were "essentially undisputed . . . whether those facts fit within the policy definition is a question of law that may be decided on appellate review." *Id*. The undisputed facts were that the son had a separate apartment unit, but also had the master key to his father's apartment. *Id*. at 351. The son had unrestricted use of his father's apartment and did not have a written lease or pay rent. *Id*. Therefore, the appellate court held the son was a resident of the father's household. *Id*.

[20] As in *Row*, Stacy had a separate living area from Earl but had a key to Earl's living area. Additionally, Stacy did not pay rent, did not have a lease, and had virtually unrestricted use of Earl's living area. Notably, Stacy's living area was not a full apartment with kitchen facilities, nor was it in an apartment complex.

---

[4] As United notes, the question Indiana courts usually have decided is whether children in college or children of divorced parents remain a resident of the insured's household. *See, e.g.*, *Quiring v. GEICO Gen. Ins. Co.*, 953 N.E.2d 119, 132 (Ind. Ct. App. 2011) (listing of several cases where residency is determined and noting residency of adult children is determined by several factors where "no single fact is determinative" but hinges on whether a reasonable person would consider the adult child to be a resident of the insured parent's home). However, as the facts of those cases are materially different from the facts herein, we need not review the holdings of those cases.

Rather, Stacy's living area was, at one time, connected to the rest of the house by a staircase and would have been considered part of the main house, albeit on a different floor.

[21] United also cites *Kepple v. Aetna Casualty and Surety Company*, 634 So.2d 220 (Fla. Ct. App. 1994), wherein the court was asked to decide if a married daughter of the named insured was also an insured when she and her husband lived on her parents' property. *Id.* at 221. The young couple lived in the attached garage that had been converted into an apartment. *Id.* The converted garage, though small, was a full apartment with a kitchen and shower. *Id.* The couple paid a nominal amount in rent. *Id.* The garage did not have a separate address, the couple had a key to the main residence, and the couple frequently ate dinner in the main house with the daughter's parents. *Id.* The appellate court decided that as "the material facts [we]re undisputed . . . this matter [wa]s a question of law to be decided by [it.]" *Id.* at 223. It then decided that, under these facts, the daughter was a resident of her parents' home. *Id.*

[22] As in *Kepple*, Stacy did not have a separate address from Earl, and Stacy lived in a part of the main house that had been converted into a separate living area. He also frequently ate his meals with Earl. Unlike *Kepple*, Stacy did not pay even nominal rent, and his apartment did not have a functional kitchen.

[23] Using the three-part test for residency, we note Stacy had a physical presence in Earl's home, whether we define that home as both the upstairs and downstairs or whether we limit it to the downstairs. Stacy slept upstairs but spent

significant time downstairs with Earl. Stacy had access to Earl's home, both upstairs and downstairs. Thus, we look to Earl's subjective intent.

[24] Earl stated during his deposition on August 22, 2017, that Stacy did not pay rent, Stacy had a key for the "whole house," (Appellant's App. Vol. III at 133), Earl provided all of Stacy's transportation, and Stacy had free access to the house. However, he then insisted Stacy "wasn't a part of [his] household, but [Stacy] did come and have his meals with me when he wanted." (*Id*. at 135.) The Estate argues Earl has maintained consistently that Stacy does not live with him because in the interrogatories sent to Earl from the Estate in the underlying case Earl states none of his children live with him. (*See* Appellee's App. Vol. II at 47 (when asked whether any of his children live with him, Earl answered "No").)[5]

[25] The Estate's argument that Earl's subjective intent was that Stacy did not live with him is not supported by the evidence. It is undisputed that Stacy had unrestricted access to the whole house and that Stacy depended on Earl to support him by providing food, housing, utilities, and transportation. Earl's statements that Stacy did not live with him are disingenuous as his actions prior to any litigation—provision of housing, food, utilities, and transportation—

---

[5] The Estate also argues Earl admitted "that he lived alone. . . ; that Stacy was not living with him at that address; [and] that Stacy lived by himself at a separate apartment without an access to Earl's place of residence other than through a locked door[.]" (Br. of Appellee at 10.) However, these admissions are the result of a request from the Estate to Earl and do not bind United. *See Herff Jones, Inc. v. State Bd. of Tax Comm'rs, Ind.Tax, No. 49T05-8610-TA-00030*, 512 N.E.2d 485, 489 (Ind. T.C. 1987) (admissions not directed to a party are not binding on that party).

show Stacy resided with Earl. *See Quiring v. GEICO Gen. Ins. Co.*, 953 N.E.2d 119, 130-31 (Ind. Ct. App. 2011) (party's statements regarding her subjective intent as it related to her residence were "akin to a conclusion of law that is insufficient to preclude summary judgment," therefore, a statement of intent is relevant but the reviewing court must look at the "totality of the evidence").

No question of fact exists to preclude summary judgment. Stacy, like the children in *Row* and *Kepple*, was a resident of his parent's household.[6] Under the policy definition, therefore, Stacy was an insured. Because Stacy qualifies as an insured, the exclusion clause applies and United is not obligated to defend or indemnify either Stacy or Earl. Therefore, as a matter of law, summary judgment for United is proper.

# Conclusion

Because no question of material fact existed as to whether Stacy was a resident of Earl's household, the trial court erred in denying summary judgment to

---

[6] This case is distinguishable from our holding in *Secura Supreme Ins. Co. v. Johnson*, 51 N.E.3d 356 (Ind. Ct. App. 2016), *reh'g denied*. In *Secura*, the O'Brien family had a second house wherein a family member lived. The family member's dogs harmed a third party. We held summary judgment was not proper because although the "extrinsic facts allow for the possibility that the O'Briens' household extends from the Hobart house to the Valparaiso house . . . a fact-finder could also conclude that a landlord-tenant relationship is incompatible with being a member of a household." *Id*. at 361. Thus, although the facts were undisputed, there existed a genuine issue of material fact as to whether the family member was a resident or a tenant. Here, Stacy is living in the same structure as Earl, does not pay rent, and does not support himself. Therefore, no genuine issue of material fact exists as to whether Stacy is a tenant or a resident of Earl's household.

United. Accordingly, we reverse and remand with instructions to grant summary judgment in favor of United.

[28] Reversed and remanded.

Baker, J., and Bailey, J., concur.