**Christa JONES, Deborah Wright, and John Wright, Appellants–Plaintiffs,**

v.

**WESTERN RESERVE GROUP/LIGHTNING ROD MUTUAL INSURANCE COMPANY, Appellee–Defendant.**

**No. 68A05–9708–CV–326.**

Court of Appeals of Indiana.

Sept. 16, 1998.

Rehearing Denied Oct. 16, 1998.

Karl L. Mulvaney, James P. Strenski, Candace L. Sage, Bingham Summers Welsh & Spilman, Indianapolis, R.T. Green, Blackburn & Green, Fort Wayne, for Appellants–Plaintiffs.

Alan A. Bouwkamp, Renae L. Hermann, Jennings Taylor Wheeler & Bouwkamp, P.C., Carmel, for Appellee–Defendant.

## OPINION

SULLIVAN, Judge.

Appellants, Christa Jones (Jones), Deborah Wright, and John Wright (the Wrights), appeal the trial court's order granting summary judgment in favor of Western Reserve Group/Lightning Rod Mutual Insurance Company (Western Reserve).

We reverse.

The appellant's sole contention upon appeal is whether the trial court erred in determining that, as a matter of law, on July 12, 1994, Jones was not a "resident" of the Wrights' household[1] within the context of the Wrights' automobile liability insurance policy (Policy), which provided uninsured/underinsured motorist coverage for any family member who was a "resident" of the Wrights' household. We hold that summary judgment is inappropriate because the evidence presented reasonably creates conflicting inferences concerning the ultimate fact of Jones' residency status under the Policy.

In April of 1992, Jones moved with her mother Deborah Wright and her stepfather John Wright to Winchester, Indiana, from California. At that time, Jones enrolled in the ninth grade at Winchester High School. During Jones' sophomore year, classmates spread rumors of a sexual nature about her. As a result, Jones considered quitting high school. Instead, on March 15, 1993, Jones moved into the home of her aunt Kathy Frame (Frame), who resided in Richmond, Indiana. The predominant purpose of this move apparently was to encourage Jones to complete high school. Jones brought clothes and various personal items with her to Richmond; however, she left some clothes, a television and her stereo at the home in Winchester. Once Jones moved out of the

---

1. The parties do not squarely address the definition of "household." One Indiana decision has given the term "household" a broad meaning in the context of a homeowner's insurance policy. *Erie Ins. v. Stephenson* (1996) Ind.App., 674 N.E.2d 607, 610 (citing *Mazzilli v. Accident & Casualty Ins. Co. of Winterthur, Switzerland,* 35 N.J. 1, 170 A.2d 800 (1961) (finding "no requirement that members of a household live under the same roof")). Because we resolve the present case based upon an analysis of the term "resident," we decline to examine whether the term "household" had a clear meaning within the context of the disputed policy provision.

Winchester home, her younger brother began sleeping in Jones' former bedroom, although personal items of Jones continued to be stored in the room.

Frame accompanied and assisted Jones in enrolling in classes at Richmond High School. In order to enroll Jones, Frame and the Wrights executed a custody statement claiming that Jones lived at her aunt's address. While living with Frame, Jones did not have her own room. Instead, Jones slept either on a mattress in the bedroom of Frame's ten-year-old daughter or on the couch. While Jones stayed with Frame, the Wrights helped pay for groceries, rent and other items.

Following her sophomore year, Jones moved into an efficiency apartment located in Richmond. According to Jones, she did not want to be "a burden" to Frame, and she wanted to "try and make it out on [her] own." Record at 190. Although Jones was employed at the time, the Wrights helped to furnish the apartment and assisted Jones in meeting her rent obligations. However, approximately three months later, Jones moved out of the apartment, after she lost her job and could no longer afford to pay her rent. She then moved in with Jackie Jones, another aunt residing in Richmond, with whom she stayed for approximately seven months. In May of 1994, during the spring of her junior year, Jones moved into a second apartment with two of her high school friends.

Jones continued living in this second apartment until July 12, 1994. On that day, Jones was involved in an automobile accident in which she was a passenger in a vehicle operated by her boyfriend, Kevin Gibson. She was critically injured in the collision and upon her release from the hospital returned to the Wright home in Winchester to recover. In October of 1994, Jones re-enrolled at Winchester High School.

On or about June 14, 1994, Western Reserve issued the Policy to the Wrights. After receiving twenty thousand dollars from Kevin Gibson's insurer, Jones and the Wrights requested compensation per the underinsured motorist provisions of the Western Reserve Policy. Western Reserve investigated the claim but ultimately determined that Jones was not covered, because she was not a "resident" of the Wrights' household at the time of the accident.

On June 13, 1995, Jones and the Wrights filed a complaint for declaratory judgment against Western Reserve, seeking a determination that Jones was covered as an insured under the Policy. On July 20, 1995, Western Reserve filed its answer and counterclaim for declaratory judgment, requesting a finding that the Policy did not cover Jones. Both parties subsequently filed motions for summary judgment. After a hearing, the trial court on May 1, 1997, granted Western Reserve's motion for summary judgment and denied Jones' and the Wrights' motion for summary judgment.

■ We must carefully scrutinize an entry of summary judgment in order to ensure that the non-prevailing party is not denied her day in court. *General Motors Corp. v. Northrop Corp.* (1997) Ind.App., 685 N.E.2d 127, 132, *reh'g denied.* Summary judgment is appropriate where the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Miller Brewing Co. v. Bartholemew County Beverage Co., Inc.* (1997) Ind.App., 674 N.E.2d 193, 198, *trans. denied.* The burden is upon the moving party to establish, prima facie, that no genuine issues of material fact exist and that she is entitled to judgment as a matter of law. *Chance v. State Auto Ins. Co.* (1997) Ind.App., 684 N.E.2d 569, 570, *trans. denied.* The burden then falls upon the opponent to respond by setting forth specific facts demonstrating a genuine issue for trial. *Id.*

■ On appeal, we must apply the same standard as the trial court and resolve any disputed fact or inference in favor of the non-movant. *Abbott v. Bates* (1996) Ind.App., 670 N.E.2d 916, 921, *reh'g denied.* In order to prevail, the appealing party must establish the existence of a genuine issue of material fact from those materials designated to the trial court. *Miller Brewing, supra,* 674 N.E.2d at 198; *Wiggam v. Associates Fin. Serv. of Ind., Inc.* (1997) Ind.App., 677 N.E.2d 87, 90, *trans. denied.* Genuine issues

of material fact exist where facts concerning an issue which would dispose of litigation are in dispute. *General Motors, supra,* 685 N.E.2d at 132. Even if the trial court believes that the non-moving party will not prevail at trial, summary judgment is not appropriate and may not be entered where conflicting inferences arise from the undisputed facts. *Id.*

In the instant case, the trial court entered specific findings and conclusions. However, the entry of such findings and conclusions does not change our standard of review. *Allstate Indem. Co. v. Brown* (1998) Ind.App., 696 N.E.2d 92, 94. Summary judgment orders do not require specific findings or conclusions. *Id.* While the trial court's findings and conclusions offer valuable insight into the rationale for its judgment and facilitate appellate review, they are by no means binding upon this court. *Id.*

The dispute involves the interpretation of an insurance contract. Specifically, construction of the term "resident" is at issue. The Policy's underinsured motorist provisions cover any "family member," which is defined as "a person related to [the insureds] by blood, marriage or adoption who is a *resident* of [the insureds'] household." Record at 20 (emphasis supplied). "Resident" is not further defined in the Policy.

In interpreting a contract for insurance, we use the same rules of construction and interpretation as apply to other contracts. *Smith v. Allstate Ins. Co.* (1997) Ind.App., 681 N.E.2d 220, 223. Where a policy's language is clear and without ambiguity, it should be given its plain and ordinary meaning. *Erie Ins. Exch. v. Stephenson* (1997) Ind.App., 674 N.E.2d 607, 609. Contractual language is ambiguous when it is

susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning. *Smith, supra,* 681 N.E.2d at 223. Moreover, no rule of insurance policy construction mandates that each and every contractual term be defined. *Id.* Courts will not deem a contract's language ambiguous merely because each party to a dispute favors a different interpretation. *Id.*

We do not find the term "resident," as used in the Policy, to be ambiguous on its face. However, because the parties left the term "resident" undefined, we must apply the common law of Indiana to flesh out its meaning.[2] As a general principle, "resident" has no fixed or precise meaning in the law. *Allstate Ins. Co. v. Neumann* (1982) Ind. App., 435 N.E.2d 591, 593; *See generally* David B. Harrison, Annotation, *Who is "resident" or "member" of same "household" or "family" as named insured, within liability insurance provision defining additional insureds,* 93 A.L.R.3d 420 (1979 & Supp.1998). As noted by the court in *Neumann,* "It is an amorphous term that ... has as many colors as Joseph's coat." *Neumann, supra,* at 593 (citing *Weible v. United States,* 244 F.2d 158 (9th Cir.1957)).

In determining one's residency status under an auto liability insurance contract, Indiana courts consider the following factors: (1) whether the claimant maintained a physical presence[3] in the named insured's home; (2) whether she possessed the subjective intent[4] to reside therein; and (3) the nature of her access to the named insured's home and its contents. *Chance, supra,* 684 N.E.2d at 571; *Neumann, supra,* 435 N.E.2d at 594. In addition, the fact finder must consider all of the evidence indicative of the claimant's

---

2. The parties do not dispute that the substantive law of Indiana applies.

3. Prior cases express the requirement of physical presence in terms of "more than mere physical presence is necessary." *See Chance, supra,* 684 N.E.2d at 571; *Aetna Casualty & Sur. Co. v. Crafton* (1990) Ind.App., 551 N.E.2d 893, 895; *Neumann, supra,* 435 N.E.2d at 594. This creates the implicit requirement that Jones have some level of physical presence in the Winchester household. The fact finder must consider all the facts of Jones' living habits to determine

whether the parties reasonably would have considered her contacts with the Winchester home sufficient enough to constitute a physical presence within the home at the time of the accident.

4. However, as noted by the Indiana Supreme Court, "A self-serving statement of intent is not sufficient to find that a new residence has been established." *State Election Bd. v. Bayh* (1988) Ind., 521 N.E.2d 1313, 1318 (interpreting Indiana's state constitutional residency requirement for the office of Governor).

living habits. *Aetna Casualty & Sur. Co. v. Crafton* (1990) Ind.App., 551 N.E.2d 893, 895. These factors should be considered in the context in which the term "resident" is used and the purpose of the instrument in which the term is employed. *Neumann, supra* at 593.

Only one Indiana case has considered the term "resident," as used within an auto liability insurance policy, in an appeal from a summary judgment order.[5] In *Chance v. State Auto Insurance Companies* (1997) Ind. App., 684 N.E.2d 569, *trans. denied*, a declaratory judgment action was brought against the insurer by a mother seeking a determination that her deceased son had been a resident of her household in Fort Wayne, Indiana, although the son had been residing with his brother in Marion, Indiana, at the time of his fatal auto accident. The mother and her husband had been trying to sell the Fort Wayne household and had executed a custodial statement giving the brother custody of the son, so that the son could attend school in Marion. The mother argued that she did not give the brother full custody; instead, she gave only limited custody for the purpose of allowing the son to attend school in Marion. Furthermore, the mother noted that she continued providing support for the son and that the move was only temporary until she and her husband could move back to Marion. In addition, she alleged that the son returned to the Fort Wayne home almost every weekend.

The court in *Chance* held that, because the mother had signed the custody agreement, she was estopped from stating that she only gave the brother custody for school purposes and that she continued to provide support.[6] *Chance, supra,* 684 N.E.2d at 571. The mother was not permitted to create an issue of material fact for summary judgment purposes by contradicting the prior sworn statement. Finally, the court concluded, "The actions of the parties and the prior statements of the parties lead inescapably to the conclusion that [the mother] gave temporary custody of [the son] to [the brother] and that [the son] had relocated his residence to [the brother's] house." *Id.*

In upholding summary judgment for the insurer, the reviewing court failed to comment as to which "actions of the parties" contributed to the determination that the son had relocated his residence to Marion prior to his death.[7] The court's decision was based almost exclusively on an estoppel theory. The mother was not permitted to successfully claim that, contrary to the terms of the custody statement, she in fact had been supporting the son and the brother's custody was for the limited purpose of the son's education. The court did not decide whether the totality of facts did or did not support the reasonable inference that the deceased son was a resident of the mother's household for the purpose of coverage under the uninsured motorist provisions of her husband's auto insurance policy.

5. Three Indiana cases involve appeals from negative judgments. *See Aetna Casualty & Sur. Co. v. Crafton* (1990) Ind.App., 551 N.E.2d 893 (although divorced parents had joint custody of son, son could not be considered a "resident" under mother's auto insurance policy where he lived almost exclusively with the father); *Johnson v. Payne* (1990) Ind.App., 549 N.E.2d 48, *trans. denied* (considering several factors, evidence supported finding that claimant was not a "resident" of his former wife's household for purpose of insurance coverage); *Allstate Ins. Co. v. Neumann* (1982) Ind.App., 435 N.E.2d 591, 594 (while girlfriend's living habits were "susceptible to the conclusion that she was a resident of [the insured's] household, it certainly did not command that conclusion.").

6. The form language in the *Chance* case was similar to that contained on the custody form

signed by the Wrights and Kathy Frame. It indicated that the custodian was supporting and caring for the student and that the child was not placed with the custodian for the primary purpose of attending school.

7. For example, the mother had first successfully processed a claim for benefits under the brother's separate auto insurance policy. In doing so, she stated that her deceased son had been a resident of the brother's household at the time of the accident. *Chance, supra,* 684 N.E.2d at 570. The mother was thus claiming that, for purposes of insurance coverage under two distinct policies, her deceased son had resided both in Marion and Fort Wayne. The court's decision did not indicate whether this "action" by the mother contributed to its ruling.

In the instant case, we decline to apply the estoppel rationale. The Wrights and Kathy Frame, in signing a custody agreement regarding Jones, should not thereby be understood to have relinquished Jones' access to coverage under the Policy. Furthermore, Western Reserve did not rely upon any representations in the custody statement as to Jones' residency status in contracting with the Wrights.[8] *See Shewmaker v. Etter* (1994) Ind.App., 644 N.E.2d 922, 930 (noting that "reliance" is an "essential element" of equitable estoppel). Rather, the signing of the agreement should be considered one of numerous factors for the fact finder to consider in deciding Jones' residency status.

Aside from the ultimate fact of Jones' residency status, the parties do not dispute the material facts of this case.[9] However, while the facts appear to weigh against Jones being found a resident of the Wright home in Winchester, reasonable persons could draw a contrary interpretation. For example, one could reasonably conclude that Jones' attempt to move into her own apartment was merely a failed experiment in independence, not the manifestation of her intent to permanently leave the home in Winchester.[10] Furthermore, we are not required to find that Jones possessed one exclusive residence. As noted by the court in *Neumann*, "It follows that at least for some purposes a person may have more than one residence." *Neumann, supra*, 435 N.E.2d at 593. However, we decline the appellants' invitation to interpret the term "resident" in the Policy as meaning "domicile" or a "fixed residence." While that is a reasonable interpretation of the term, we cannot as a matter of law supply such defini-

8. Western Reserve relies upon the fact that the Wrights did not even list Jones as a resident on the application for the disputed insurance policy in supporting its position that Jones was not a resident of the Winchester household. Record at 352. Western Reserve does argue that it relied upon the Wrights' application in calculating their premium for the Policy. *Appellee's brief* at 24. However, applying this view, none of the Wrights three other children would have been considered "residents" under the Policy, because none were listed in the application. Additionally, the record indicates that Western Reserve's agent may have intentionally left off the Wrights' children from the application for the Policy. In his deposition testimony on October 5, 1995, John Wright responded to the following questions from Western Reserve's counsel about the auto liability insurance policy issued to the Wrights immediately prior to the disputed policy:

Q: Then down here at the very bottom, the last category is "Household Residents Not Listed As Drivers", and written in there is the word "None", is that correct?

A: I told [the insurance agent] we had all the kids there but I don't know why she put "None" down here.

Q: You told the person that was filling out this application who all was living in your household?

A: Yes. I told [the insurance agent] that I had four children but none of 'em drove, you know.

Q: Is any of this your handwriting on either of these two applications [which includes the disputed Policy]?

A: No, I can't write that good. Record at 304.

It appears that an agent for Western Reserve filled out the application on behalf of the Wrights both for the prior policy and the disputed Policy. Whether Western Reserve's agent intentionally left blank the line listing non-driving additional residents is a question of fact not fleshed out in the record. We cannot say as a matter of law that the Wrights misrepresented the number of residents of their household or that Western Reserve relied upon such alleged misrepresentations.

9. Western Reserve does dispute the frequency with which appellants claim Jones visited the Winchester household. In their brief, appellants assert that Jones visited almost every weekend, on holidays and on summer vacation. *Appellants' brief* at 27. Western Reserve points out that, in her deposition, Jones testified that she would return to the Winchester household "[s]ome week-ends, holidays, like Christmas and the New Year, and on my birthday I'd go up. I'd spend like a couple of weeks or so when they went vacationing in the summer." *Appellee's brief* at 25 (citing Record at 183).

10. *See, e.g. Concord Group Ins. Companies v. Sleeper*, 135 N.H. 67, 600 A.2d 445, 447 (1991) (facts supported the inference that a sixteen year old boy's move from his grandmother's home to an apartment with his girlfriend, where he lived at the time of the auto accident, "may be considered an experiment with independence"); *State Farm Mut. Auto. Ins. Co. v. Elkins* (1975) 52 Cal.App.3d 534, 539, 125 Cal.Rptr. 139 (Cal.Ct. App.1975) (daughter who enrolled for fall college classes but who had full time job and was living in her own apartment at the time of the accident was engaged in "a temporary experiment, not a permanent separation" from her family's home).

tion.[11] Whether Jones was a resident of the Winchester household at the time of her accident is a question of fact.[12]

We do not hold that Jones was in fact a resident of the Winchester home. We simply conclude that, applying Indiana's common law treatment of "resident," reasonable minds could differ as to the inferences supported by the undisputed facts. Resolving all facts and reasonable inferences in favor of Jones and the Wrights, we cannot state, as a matter of law, that Jones was not a "resident" of the Winchester household at the time of her accident. Therefore, we hold that the trial court improperly granted summary judgment in favor of Western Reserve.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion.

KIRSCH and BAKER, JJ., concur.

**11.** *See Neumann, supra,* 435 N.E.2d at 593 (observing that, at its extremes, "resident" could refer to "domicile" or include transients).

**12.** *See Crafton, supra,* 551 N.E.2d at 895 ("A motorist's residence is determined by considering all of the evidence indicative of his living habits."); *Mid–Century Ins. Co. v. Duzykowski,* 131 Ariz. 428, 641 P.2d 1272, 1274 (1982) (ultimate issue of daughter's residency status "remains a *factual* determination") (emphasis supplied in original); *Pruitt v. Farmers Ins. Co.,* 950 S.W.2d 659, 665 (Mo.App.1997), *trans. denied* ("Residence is a question of fact."); *Wood v. Mutual Serv. Casualty Ins. Co.,* 415 N.W.2d 748, 750 (Minn.App.1987), *review denied* ("Residency in a household is a question of fact."); *Dofflemyer v. Gilley,* 395 So.2d 403, 405 (La.App.1981) ("A person's residence is determined from the particular facts of each case."); *United Services Auto. Ass'n v. Mione,* 34 Colo.App. 448, 528 P.2d 420, 421 (1974) ("The question of whether one may be considered the resident of a household is an issue to be determined by the facts and circumstances of each particular case.").