Bethany QUIRING, Linda Ann Johnston f/k/a Linda Ann Loughery, and Earl Alfred Loughery, Jr., Appellants–Defendants,

v.

GEICO GENERAL INSURANCE COMPANY, Appellee–Plaintiff.

No. 52A02–1012–CT–1434.

Court of Appeals of Indiana.

Aug. 9, 2011.

Matthew W. Chapel, Fort Wayne, IN, Attorney for Appellant.

Benjamin D. Ice, William A. Ramsey, Murphy Law Group, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

Bethany Quiring was injured in an automobile collision in Oklahoma. She filed suit in Oklahoma against the other driver for negligence and GEICO General Insurance Company ("GEICO"), seeking underinsured motorist benefits under a GEICO policy issued to Quiring's mother, who lives in Indiana. GEICO then filed this declaratory judgment action in Indiana, seeking a declaration that Quiring was not a resident of her mother's Indiana household and as such was not covered by her mother's policy. The trial court granted GEICO summary judgment. Quiring appeals, raising the following restated issues for our review: 1) whether the trial court abused its discretion in denying Quiring's motion to dismiss or stay the declaratory action in view of the pending, previously filed lawsuit in Oklahoma; 2) whether the trial court abused its discretion in denying Quiring's motion for a continuance of the summary judgment hearing to conduct discovery; 3) whether the trial court properly granted summary judgment that Quiring was not a resident of her mother's Indiana household; and 4) whether the trial court properly granted summary judgment that Quiring's mother's policy is an Indiana policy.

We conclude the trial court did not abuse its discretion in denying Quiring's motion to dismiss or stay, the designated evidence establishes as a matter of law that Quiring was not a resident of her mother's household at the time of the collision, and our resolution of these two issues renders the remaining issues immaterial. We therefore affirm the trial court's summary judgment.

### Facts and Procedural History

Bethany Quiring was born in Tulsa, Oklahoma in 1987. Her parents, Linda Johnston and Jerry Quiring, divorced around two years later and were given joint legal custody with her father having primary physical custody. Both parents as well as Quiring lived in Oklahoma up through the time Quiring graduated from high school. In early 2006, Johnston moved to Macy, Miami County, Indiana to care for her mother. Around that time, Quiring began attending Tulsa Community College and, while a student there, lived at her father's house. In January 2008, Quiring enrolled at Oklahoma State University in Stillwater, Oklahoma, and lived in student dormitories while class was in session. Quiring spent Christmases and some other holidays at Johnston's home in Indiana, also visiting her grandmother who resided on the same family farm. In March 2009, Quiring obtained her own GEICO insurance policy on her 1998 Toyota Camry, a vehicle gifted to her by her

father and stepmother. Johnston provided money to pay most of the policy premiums, yet the policy was issued solely to Quiring at her address in Stillwater. During the summer of 2009, Quiring traveled to Germany with her expenses paid in part by Johnston.

On October 10, 2009, Quiring was driving the Camry on a highway in Oklahoma when a vehicle driven by Bryan Capehart collided with her vehicle. On October 30, 2009, Quiring filed suit in Creek County, Oklahoma, suing Capehart for negligence and GEICO for breach of contract to recover underinsured motorist ("UIM") benefits.[1] In her complaint, Quiring, still a student at Oklahoma State, alleged she was a resident of both her father's Oklahoma household and Johnston's Indiana household. Quiring claimed coverage under both her own GEICO policy, with UIM policy limits of $25,000 per person and $50,000 per accident, and a policy issued to Johnston (the "Johnston policy"), which provided higher policy limits. Earl Loughery, Jr., Johnston's former husband after Jerry Quiring, is the other named insured on the Johnston policy; Quiring is not a named insured.

In the Oklahoma lawsuit, GEICO resolved Quiring's claim under her own policy by paying her UIM policy limits, so only her claim under the Johnston policy remained.[2] The Johnston policy provided UIM coverage of $100,000 per person and $300,000 per accident to resident relatives of the Johnston household. Specifically, the amendment for UIM coverage provided the following definition:

"Insured" means:

(a) you;

(b) your relatives;

(c) any other person occupying an insured auto; or

(d) any person who is entitled to recover damages because of bodily injury sustained by an insured under (a), (b) and (c) above.

Appendix to Appellant's Brief at 253 (emphasis omitted). This amendment incorporated the definitional section of the policy, which defined "relative" as "a person related to *you* who resides in *your* household." *Id.* at 233 (emphasis in original).

On March 23, 2010, GEICO filed, in Miami Circuit Court, the present declaratory judgment action naming Quiring, Johnston, and Earl Loughery, Jr., as defendants.[3] GEICO sought a declaration that 1) the Johnston policy and any claims arising under it are governed by Indiana law; and 2) Quiring is not entitled to any coverage under the Johnston policy because Quiring is not (and was not at the time of the collision) a resident relative as defined in the policy and was not driving an insured automobile. GEICO also

---

1. The complaint did not make clear whether Capehart was an underinsured or an uninsured motorist, and accordingly claimed both types of coverage. For ease of reference, we refer to Quiring's claim as one for underinsured motorist benefits.

 Although Quiring asserts that among her claims against GEICO was a bad-faith claim, Quiring does not support this assertion with any citation to the pleadings other than a broadly-worded request for damages. The Oklahoma complaint includes only a claim for breach of contract, and there is no indication an amended complaint was filed.

2. Quiring's lawsuit also asserted a claim against Oklahoma Farm Bureau Mutual Insurance Company, seeking UIM benefits under a policy issued to her father. That claim, too, has been resolved.

3. Johnston's last name was formerly Loughery, and she is identified as such in the trial court documents. For ease of reference, we will refer to the defendants collectively as "Quiring" where appropriate.

moved to stay the Oklahoma lawsuit, informing the Oklahoma court that "GEICO filed its Complaint for Declaratory Judgment in Indiana based on the [Indiana] Choice of Law provision in [t]he [Johnston] GEICO policy, and the fact that . . . the named insureds, live in Indiana." *Id.* at 96.

Quiring filed a motion to dismiss or, in the alterative, stay the Indiana declaratory action "pending the outcome of the prior suit involving the very same issues and parties, pending in Creek County, Oklahoma." *Id.* at 68. In support of her motion to dismiss or stay, Quiring submitted the Oklahoma docket report and an order showing the Oklahoma court had denied GEICO's motion for a stay. Quiring argued the Indiana declaratory action should be dismissed or stayed because: 1) only the previously-filed Oklahoma lawsuit could resolve all of the issues raised by each party; 2) the declaratory action was thus unnecessary; 3) GEICO was attempting to shop for a favorable tribunal; and 4) principles of comity and judicial economy counseled deferring to the pending Oklahoma suit. The trial court denied Quiring's motion.

GEICO moved for summary judgment. The designated evidence showed that Johnston originally purchased her GEICO policy while living in Oklahoma. At least as early as 2008, after moving to Indiana, Johnston renewed her policy and was mailed policy identification cards at her Indiana address that were titled "INDIANA Policy Identification Card[s]." *Id.* at 262, 265, 268. Yet, continuing through the policy period covering the October 2009 collision, GEICO also mailed Johnston "Oklahoma Security Verification Form[s]" purportedly issued by "[a]n authorized Oklahoma insurer." *Id.* at 309, 311 (some capitalization omitted). Johnston's vehicles continued to be tagged and registered in Oklahoma even though documentation from GEICO listed them as garaged in Indiana. In her deposition, Johnston testified regarding telephone conversations where GEICO representatives told her she needed to speak to an Oklahoma agent regarding her policy and gave her conflicting statements to the effect that her policy was an Indiana policy but if the vehicles were tagged in Oklahoma, an Oklahoma policy would need to be issued. GEICO designated the affidavit of Vickie Mercer, its underwriting employee, who stated her personal knowledge that as of October 10, 2009, Johnston's policy was an Indiana policy and Johnston's Indiana policy contract had been mailed to her on or about July 30, 2008.

Quiring's response in opposition to summary judgment requested that the trial court's ruling be stayed for additional discovery to be had on the issue of whether Johnston's policy, as of the October 2009 collision, was an Indiana or an Oklahoma policy. By affidavit, Quiring's counsel averred that due to a lack of discovery and refusal by GEICO to cooperate in discovery in the Oklahoma lawsuit, Quiring was unable to present facts needed to justify her opposition to summary judgment on that issue. Quiring also argued it was a genuine issue of fact for trial whether she was a resident of the Johnston household.

On August 26, 2010, Quiring filed a formal motion for continuance of the summary judgment hearing, again arguing more time was needed to complete discovery on whether and when Johnston's original Oklahoma policy was converted to an Indiana policy. The trial court denied Quiring's motion for continuance and held the hearing on GEICO's summary judgment motion on September 13, 2010. After taking the matter under advisement,

the trial court issued its order granting summary judgment to GEICO.

The trial court's summary judgment order contained the following findings and conclusions, in pertinent part:

## FINDINGS OF FACT

2. Quiring resides in Oklahoma and has lived in Oklahoma her entire life.

* * *

5. When [Johnston] moved to Indiana, Quiring did not move with her. In fact, it is undisputed that Quiring has never lived in Indiana.

6. From April 2006 through October 2009, Quiring would rarely visit [Johnston]'s Indiana residence, described as one or two occasions during the year, and those occasions were on holidays, as Quiring even attended summer school in Oklahoma.

7. The last occasion Quiring visited [Johnston]'s residence in Indiana prior to her October 1, 2009 accident was during Christmas in 2008. During that visit, Quiring slept at her grandmother's home because her grandmother had several guest bedrooms and Quiring had no bedroom in [Johnston]'s Indiana home. [Johnston] had one bedroom in her Indiana residence, along with a furnished basement where guests would stay if they visited her residence. [Johnston]/Quiring claimed to store/keep some of Quiring's personal property, including a dog, some clothes, personal memorabilia, furniture, books, electric organ, homemade clothing, records, sewing and knitting equipment, crocheting equipment, pictures, personal effects and linens/sheets/housekeeping items at [Johnston]'s home at Macy, Miami County, Indiana.

8. Quiring did not possess a key to [Johnston]'s Indiana residence or a garage door opener. Miscellaneous mail intended for Quiring was sent to [Johnston]'s address and forwarded to Quiring by [Johnston].

* * *

18. The 1998 Toyota Camry operated by Quiring was not included on the declarations page of [Johnston]'s GEICO policy. The only vehicles included on the [Johnston] policy were a 2000 Chevrolet automobile and a 1999 Chrysler automobile. Furthermore, Bethany Quiring was not a named insured on [Johnston]'s GEICO policy.

* * *

## CONCLUSIONS OF LAW

* * *

43. . . . [T]his Court finds the following facts to be determinative:

- Quiring attended high school in Oklahoma and continues to attend Oklahoma State University . . .;
- Quiring has resided in dorms at Oklahoma State University since she has been enrolled there;
- [Johnston] resides in Macy, Indiana, and has lived at that address since April 1, 2006;
- Since the date of the motor vehicle accident involving Quiring in Oklahoma on October 1, 2009, Quiring has returned to Indiana only once and that was when Earl Alford Loughery drove her to Indiana for Christmas;
- During the Christmas 2009 visit and during any prior visits to Indiana from 2006 to 2009, Quiring would sleep at her grandmother's home where there was an extra bedroom . . .;
- The only mail that Quiring would ever receive at the [Johnston] resi-

dence would be birthday cards from relatives;

- Quiring would not visit the [Johnston] residence more than perhaps twice per year during holidays since 2006, and she was even enrolled in school during the summer months;

- Quiring maintains an Oklahoma drivers license and has never possessed an Indiana drivers license; and

- Quiring does not possess a key to the [Johnston] residence.

44. Utilizing these undisputed material facts in light of the three-part test outlined by the prior Indiana courts, it is clear that Quiring was not a resident of her mother's household as of the date of the motor vehicle accident, and therefore coverage under the underinsured motorist provisions of the GEICO policy possessed by [Johnston] should be precluded.

* * *

48. ... It is clear that Quiring was not operating an "insured auto" as that term is defined in the [Johnston] policy, and GEICO is entitled to summary judgment on that issue.

* * *

49. The ... policy of insurance for [Johnston] as of the date of the accident involving Quiring contained an Indiana choice of law provision....

50. Thus, any issues or conflicts with regard to interpretation of the policy and all of its amendments, definitions, and terms must be interpreted pursuant to the laws of the state of Indiana.

App. at 14–28.

Quiring now appeals. Additional facts will be supplied as appropriate.

*Discussion and Decision*

I. Denial of Motion to Dismiss or Stay

A. Standard of Review

■ A trial court's decision to deny a defendant's motion to dismiss a declaratory judgment action, to the extent the defendant challenges the appropriateness of declaratory relief, is reviewed for an abuse of discretion. *See KLLM, Inc. v. Legg,* 826 N.E.2d 136, 144–45 (Ind.Ct.App.2005), *trans. denied.* Likewise, an abuse of discretion standard applies to our review of a trial court's decision not to dismiss or stay an action in view of proceedings pending in another state. *See Drexel Burnham Lambert, Inc. v. Merchants Inv. Counseling, Inc.,* 451 N.E.2d 346, 348–49 (Ind.Ct.App. 1983).

B. Appropriateness of Declaratory Relief

Quiring argues the trial court abused its discretion in denying her motion to dismiss or stay, contending GEICO's action for declaratory relief is not appropriate in view of the previously filed lawsuit involving the same parties in Oklahoma. We disagree, concluding the facts and applicable law permit the trial court's exercise of its discretion to decide the declaratory action in Indiana.

Indiana's declaratory judgment statute provides that trial courts, within their respective jurisdictions, "have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Ind.Code § 34–14–1–1. "Any person interested under a ... written contract, or other writings constituting a contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status, or other legal relations thereunder." Ind.Code § 34–14–1–2. The declaratory judgment statute's

stated purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," and it "is to be liberally construed and administered." Ind.Code § 34–14–1–12. In applying the statute, a trial court "may refuse to render or enter a declaratory judgment or decree where the judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Ind.Code § 34–14–1–6. Indiana Trial Rule 57 provides: "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

◼ In *Volkswagenwerk, A.G. v. Watson*, 181 Ind.App. 155, 390 N.E.2d 1082 (1979), we stated that "[i]n determining the propriety of declaratory relief, the test to be applied is whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient." *Id.* at 160, 390 N.E.2d at 1085; *see also KLLM*, 826 N.E.2d at 145 (concluding declaratory judgment appropriate when it "would serve to significantly narrow or completely terminate any controversy over whether Indiana's Guest Statute applied to the circumstances surrounding [decedent]'s death"). Thus, a court "may refuse to entertain an action for a declaratory judgment where the relief sought would not terminate the controversy between the parties." *Volkswagenwerk*, 181 Ind.App. at 160, 390 N.E.2d at 1085. "The object of the declaratory judgment statute is to afford a new form of relief, not a new choice of tribunals." *Id.* at 161, 390 N.E.2d at 1085–86. Hence in *Volkswagenwerk*, this court affirmed a trial court's dismissal of

declaratory actions brought by products liability defendants, where the defendants had previously removed the tort lawsuits to federal court and returned to state court only for a declaration of legal theories available for defenses that would, in any event, remain to be litigated on their facts in federal court. *Id.* at 162, 390 N.E.2d at 1086.

Here, the issue presented in this declaratory action, whether Quiring has any UIM coverage under the Johnston policy, could have been raised and litigated by GEICO in the Oklahoma lawsuit, where Quiring sued GEICO for breach of contract and Capehart for negligence. The Oklahoma lawsuit was previously filed, and GEICO answered.[4] In a letter to Quiring, GEICO made an explicit reservation of rights "because it appears that you [Quiring] may not meet the definition of an insured" under the Johnston policy. App. at 451.

◼ However, under the specific facts of this case, GEICO was not required to litigate the coverage issue in the Oklahoma lawsuit. *See* T.R. 57 ("The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."). GEICO sought a declaration that no coverage existed for Quiring under the Johnston policy, such that GEICO would have zero liability in the Oklahoma lawsuit. *See* App. at 99 (GEICO's motion to stay Oklahoma proceedings, on grounds that if it prevails in the Indiana declaratory action, there is no longer a justiciable controversy with Quiring). Thus, GEICO is not attempting to litigate the amount of coverage or recovery in parallel forums. Rather, GEICO seeks a preliminary determination that it

---

4. GEICO's answer has not been included in the appellate record but is noted on the docket report in the Oklahoma lawsuit.

has no liability, so as to obviate litigation of the amount. Further, there is no declaratory action filed or pending in Oklahoma, so GEICO's filing for declaratory judgment in Indiana cannot be regarded as mere forum shopping. *Cf. Am. Economy Ins. Co. v. Felts*, 759 N.E.2d 649, 653, 661 (Ind.Ct.App.2001) (where declaratory judgment action previously filed by claimant in Illinois, subsequent Indiana declaratory action filed by insurance carrier was properly dismissed without prejudice).

Further, Indiana is an appropriate forum for GEICO's declaratory action, given that the named insured, Johnston, resides in Indiana, and given GEICO's position and supporting evidence that the Johnston policy—the only policy at issue in this case—was renewed by Johnston while an Indiana resident and contains an Indiana choice-of-law provision. *See also* App. at 423 (GEICO's argument that "contractual privity and standing are clear" with respect to Johnston, who resides in Indiana). If GEICO is correct that ·the Johnston policy is an Indiana policy,[5] then if the coverage issue were litigated in Oklahoma, it would likely result in the Oklahoma court applying Indiana substantive law. *See Bohannan v. Allstate Ins. Co.*, 820 P.2d 787, 793 (Okla.1991) (stating Oklahoma applies the choice of law rule in contract actions that the governing law is that of the state where the contract is made). Likewise, the Indiana choice-of-law provision would result in an Indiana court applying Indiana law to the substantive terms of the policy. *See Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind.2002) ("Indiana choice of law doctrine favors contractual stipulations

as to governing law."). The consideration that an Indiana court is better positioned than an out-of-state court to apply Indiana law, *see Am. Commercial Lines, LLC v. Northeast Maritime Inst., Inc.*, 588 F.Supp.2d 935, 946–47 (S.D.Ind.2008) (stating the court's "familiarity . . . with applicable Indiana law" weighed against transfer of venue, and "the 'interest of justice' is best served . . . when a court most familiar with the law to be applied is able to oversee the case"), means a useful purpose is served by the trial court deciding the declaratory action in Indiana.

The declaratory action also serves the purpose of resolving the coverage dispute between GEICO and Quiring, significantly narrowing the issues in the Oklahoma lawsuit. Because, as discussed below, GEICO ·prevails on the coverage issue, it can be dismissed from the Oklahoma lawsuit given that Quiring's only claim against GEICO is for breach of contract.[6] Thus, the entire controversy between GEICO and Quiring is resolved. Further, the trial court's decision to allow GEICO's declaratory action is consistent with longstanding Indiana law that it is appropriate for automobile insurance carriers to litigate coverage issues via declaratory judgment. *See Nat'l Mut. Ins. Co. v. Sparks*, 647 N.E.2d 375, 377 (Ind.Ct.App.1995) ("The appropriate procedure for an insured or an insurer to litigate contractual rights under an insurance policy is an action for declaratory judgment. . . ."), *trans. denied; Cromer v. Sefton*, 471 N.E.2d 700, 704 (Ind.Ct.App. 1984) ("Clearly the policy of the law is to keep the issue of insurance out of personal injury litigation. The usual method . . . is

---

5. As explained below in Part II.C, we need not decide for purposes of summary judgment whether the Johnston policy is an Indiana or an Oklahoma policy. We do note that GEICO designated prima facie evidence to support its position that the policy is an Indiana policy.

6. While Quiring asserts she has a separate bad faith claim against GEICO in the Oklahoma lawsuit, the pleadings in the Oklahoma suit belie that assertion.

that the insurer file[s] a separate declaratory judgment suit to determine coverage."); *Fowler v. Farm Bureau Mut. Ins. Co. of Ind.*, 137 Ind.App. 375, 382, 209 N.E.2d 262, 265 (1965) ("[I]t may no longer be doubted that the extent of an insurer's responsibility or its immunity from liability under an insurance contract are rights which it can petition to have determined by declaratory judgment" (quotation omitted)).[7]

### C. Comity

 Next, Quiring argues that principles of comity called for staying or dismissing the Indiana declaratory action in view of the previously filed, pending lawsuit in Oklahoma. Under principles of comity, Indiana courts may decline to interfere with proceedings pending in another state. *George S. May Int'l Co. v. King*, 629 N.E.2d 257, 260 (Ind.Ct.App.1994), *trans. denied.* Comity is not a constitutional requirement to give full faith and credit to the law of a sister state, rather, it is a "willingness to grant a privilege, not as a matter of right, but out of deference and good will." *Am. Economy*, 759 N.E.2d at 660 (quotation omitted). Thus, while Indiana courts "may dismiss a case in order to respect proceedings final or pending in another state's court," comity "is not a mandatory rule of law." *MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 756 (Ind.Ct.App.2010), *trans. denied.* Here, assuming for argument that the trial court could have exercised its discretion to dismiss or stay the declaratory action in view of the lawsuit pending in Oklahoma, it was not required to do so. In sum, the trial court did not abuse its discretion by denying Quiring's motion to dismiss or stay.

### II. Summary Judgment

#### A. Standard of Review

We review a trial court's summary judgment order de novo. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 196 (Ind.2009). We apply the same standard as the trial court: whether the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. T.R. 56(C); *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind.2002). In making this determination, we construe all facts and reasonable inferences in a light most favorable to the non-moving party, *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind.2000), and resolve all doubts as to the existence of a factual issue against the moving party, *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind.1996). The moving party has the initial burden of proving that there are no genuine factual issues and that judgment as a matter of law is appropriate, and only then must the non-moving party respond by setting forth specific facts showing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992). When, as here, the trial court's summary judgment order contains findings of fact and conclusions of law, we are not bound by the findings and conclusions, though they aid our review by providing the reasons for the trial court's decision. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996).

---

**7.** On this basis, *Madden v. Houck*, 403 N.E.2d 1133 (Ind.Ct.App.1980), and *Rainwater v. Merriman*, 127 Ind.App. 520, 142 N.E.2d 467 (1957), relied upon by Quiring, are distinguishable. Each of those cases involved a declaratory judgment held to be inappropriate as against a public official, on the basis that other statutory or common-law remedies were available and more complete. *Madden*, 403 N.E.2d at 1135–36; *Rainwater*, 127 Ind. App. at 530, 142 N.E.2d at 473.

## B. Residence

■ The parties agree that Quiring is insured under the Johnston policy only if she is a resident of the Johnston household. Quiring argues an issue of fact remains as to whether she was a resident of Johnston's Indiana household at the time of the October 2009 collision. GEICO replies that the undisputed facts require affirming the trial court's conclusion that, as a matter of law, Quiring did not reside with Johnston.

■ Because the terms "resident" or "resides" are not defined in the GEICO policy, we look to Indiana common law to ascertain and apply their meaning. See Jones v. Western Reserve Grp./Lightning Rod Mut. Ins. Co., 699 N.E.2d 711, 714 (Ind.Ct.App.1998), trans. denied. While the parties have disputed whether Johnston's policy is an Indiana policy containing an Indiana choice of law provision, or remained an Oklahoma policy, both parties cite Indiana law in support of their respective positions as to Quiring's residency. We accept the implicit stipulation for applying Indiana law, in light of the principle that absent a meaningful difference in states' laws, no choice of law analysis is necessary and the law of the forum state will be applied. See Hartford Accident & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind.Ct.App.1997), trans. denied.

■ Quiring does not argue the terms "resident" or "resides" are ambiguous. Rather, we have stated the term "resident" is not ambiguous on its face. Jones, 699 N.E.2d at 714. In Armstrong v. Federated Mut. Ins. Co., 785 N.E.2d 284 (Ind.Ct.App.2003), trans. denied, we stated the term "resident" in an insurance policy was "neither technical in nature nor a legal term of art"; rather, it was "unambiguous and well understood by the average juror" and, as such, did not require a definitional jury instruction. Id. at 287–89. When language in an insurance policy is clear and unambiguous, we give that language its plain and ordinary meaning. Progressive Ins. Co., Inc. v. Bullock, 841 N.E.2d 238, 245 (Ind.Ct.App.2006), trans. denied. The term "resident" is given a broad meaning in provisions that, as here, extend coverage to persons other than the named insured, as distinguished from exclusionary provisions in policies. Aetna Cas. & Sur. Co. v. Crafton, 551 N.E.2d 893, 895 (Ind.Ct.App.1990). However, we are "limited to the reasonable interpretation of the term as used." Id. (quotation omitted, emphasis in original).

Addressing the meaning of residence in an automobile insurance policy, this court observed that residence, as distinguished from domicile and from merely transient physical presence, "refer[s] to one having a fixed abode but only for the time being." Allstate Ins. Co. v. Neumann, 435 N.E.2d 591, 593 (Ind.Ct.App.1982). "More than physical presence [is] necessary" for one to be a resident of a household, as there is also "a subjective element of intent." Id. at 594. A person may have more than one residence. Id. at 593. Such a meaning of residence comports with the purpose of an "inclusion clause ... to provide coverage to persons having unrestricted access to the home and its contents." Id. at 594. Subsequent cases have articulated a three-factor test for determining residence: "(1) whether the claimant maintained a physical presence in the named insured's home; (2) whether she possessed the subjective intent to reside therein; and (3) the nature of her access to the named insured's home and its contents." Jones, 699 N.E.2d at 714 (footnotes omitted). In addition, "the fact finder must consider all of the evidence indicative of the claimant's living habits." Id. at 714–15.

First, Quiring's physical presence in the Johnston home was minimal. After John-

ston moved to Indiana in 2006, Quiring visited Johnston no more than once or twice per year. The last time that Quiring visited Johnston before the October 2009 collision was the Christmas vacation of 2008, when Quiring stayed for two weeks. Quiring spent days and ate meals at Johnston's home, but slept in the guest bedroom at her grandmother's house. Between the collision and December 2010, Quiring visited Johnston only once, again over Christmas vacation. Notably, Quiring never lived full-time at Johnston's Indiana home because Johnston established that new residence only after Quiring graduated from high school and began community college in Oklahoma. Thus, this case is unlike *Jones*, where an issue of fact remained in part because the claimant previously lived full-time at her parents' home, so her temporary moves to others' homes for schooling purposes could be viewed as not exclusive of a continuing residence with her parents. *See* 699 N.E.2d at 712–13, 716–17. Rather, Quiring's physical presence in the Johnston home was that of a temporary visitor and non-resident family member.

Second, Quiring's subjective intent was, at best, equivocal as to whether she intended to reside at Johnston's home. Johnston's deposition testimony indicated Quiring was undecided as to her plans for after graduation, had considered moving to Germany, and there was no plan for Quiring to move to Indiana and reside with Johnston full-time. App. at 282, 285. Johnston opined that at the time of the October 2009 collision, Quiring's "actual home residence" was her student apartment in Oklahoma, although Johnston "always considered her a member of my family and a resident of my home as far as financial and emotional." *Id.* at 386–87. Similarly, Quiring testified in her deposition that she was unsure where she would reside in the future, but it was possible she

would stay in Stillwater to work. *Id.* at 276, 278. When asked where she believed her residence was, Quiring replied, "my father's house, my mother's house and, at the moment, my dorm room." *Id.* at 332. Quiring's subjective intent is relevant, but in the absence of other evidence supporting an inference of intent, her conclusory assertion she was a resident of Johnston's home is akin to a conclusion of law that is insufficient to preclude summary judgment. *See Hirschauer v. C & E Shoe Jobbers, Inc.*, 436 N.E.2d 107, 111 (Ind.Ct. App.1982) (conclusory assertion defendant had "control" of premises "merely offered a conclusion of law" insufficient to preclude summary judgment); *see also Jones*, 699 N.E.2d at 714 n. 4 ("A self-serving statement of intent is not sufficient to find that a new residence has been established." (quoting *State Election Bd. v. Bayh*, 521 N.E.2d 1313, 1318 (Ind.1988))).

Third, Quiring did not have unrestricted access to the Johnston home and its contents. Quiring does not possess a key to the Johnston home. Quiring does keep some personal belongings at Johnston's home, but these are largely gifts from family members or items of sentimental or occasional value, rather than everyday use: children's furniture, toys, other childhood items, books, some clothes, sewing equipment, and an electric organ, for instance. Other belongings included kitchen items that Johnston "ha[dn't] sent to [Quiring] yet or she ha[dn't] picked up yet." App. at 352. Johnston keeps Quiring's dog because the dog was gifted by a relative and could not stay at Quiring's college dormitory. Quiring's remaining belongings were kept at her dormitory, her father's residence, and a commercial storage facility. When Quiring traveled to Germany for the summer of 2009, she stored her Toyota Camry in Collinsville, Oklahoma. Living hundreds of miles away from Indiana,

Quiring clearly did not rely upon having regular access to the Johnston residence.

■ Prior caselaw indicates a person can be a resident of two households, such as where parents have joint custody of minor children. *Cf. Ind. Farmers Mut. Ins. Co. v. Imel*, 817 N.E.2d 299, 305 (Ind. Ct.App.2004) (noting in context of grandparent visitation that a person may have more than one residence, but declining to find dual residency based on the facts). Yet, legal custody is but one factor in determining residence for purposes of an insurance policy, and is not of itself controlling; "[r]ather, the residence of a child of divorced parents must be determined by an evaluation of the unique facts of each case." *Crafton*, 551 N.E.2d at 896. In *Crafton*, although divorced parents had joint custody of their son, the son could not be considered a resident under the mother's insurance policy where he lived almost exclusively with the father. *Id.* Here, the evidence regarding custody does not support a conclusion that Quiring was a resident of Johnston's Indiana household. While Johnston and Quiring's father had joint legal custody, her father had primary physical custody. Further, Quiring was twenty-two years old at the time of the October 2009 collision, and thus was legally emancipated. *See* Ind.Code § 31–16–6–6 (providing general rule that a child is emancipated upon turning twenty-one years of age); Okla. Stat. tit. 43, § 112(E) (providing any child "shall be entitled to support by the parents until the child reaches eighteen (18) years of age").

The totality of the evidence also leads to the sole conclusion that Quiring's ties to the Johnston home in Indiana were minimal. When Quiring enrolled at Oklahoma State, she listed her father's address in Collinsville, Oklahoma as her permanent address. She also listed her father's address as her address on the police report for the collision. App. at 391. Quiring never used Johnston's home as her mailing address and never received mail there other than that sent by family members, which Johnston would forward to wherever Quiring was living. Quiring has an Oklahoma driver's license and has never held an Indiana driver's license. In March 2009, Quiring obtained her own GEICO automobile policy separate from the Johnston policy, and Quiring's policy was issued solely to her at her address in Stillwater, Oklahoma. This fact indicates an intention by Quiring not to rely upon residence with Johnston for insurance purposes, but instead to insure her own vehicular activity independent from the Johnston home. *See Crafton*, 551 N.E.2d at 895–96 (considering whether parties had the "subjective element of intent … to provide coverage to persons having unrestricted access to the [named] insured's home and its contents" (quotation omitted)); *Johnson v. Payne*, 549 N.E.2d 48, 51 (Ind.Ct.App.1990) (including in the totality of evidence regarding residency that "the insurance contract was created based upon [the named insured]'s representations that she was the only driver residing in the household"), *trans. denied.*

■ Finally, the fact that Quiring was a full-time college student and received financial and material support from her parents does not mandate a different conclusion. Quiring was twenty-two years old at the time of the collision, and her college tuition was paid entirely through student loans. Johnston did not, in the past five years, claim Quiring as a dependent on her tax returns. The definition of "relative" in the insurance policy does not, by its terms, include college students who are children of the named insured, and Quiring does not argue any ambiguity exists that could be construed to include them. Regardless of whether such inclusion would be desir-

able, we may not re-write the clear and unambiguous language of insurance policies to extend coverage where none otherwise exists. *Von Hor v. Doe*, 867 N.E.2d 276, 278 (Ind.Ct.App.2007), *trans. denied.*

In sum, the underlying material facts in this case are undisputed, and while no single fact is determinative, reasonable persons would be led to the sole inference that Quiring was not a resident of Johnston's Indiana household on the date of the October 2009 collision. *See Alexander v. Erie Ins. Exchange*, 982 F.2d 1153, 1155, 1159–60 (7th Cir.1993) (applying Indiana law to affirm summary judgment that son, under twenty-one years old, was not resident of mother's Indiana household when, five months previously, he moved to Pennsylvania to live with his father and had a full-time job and driver's license in Pennsylvania, despite son's assertion he always intended move to be temporary); *Crafton*, 551 N.E.2d at 896 (concluding an "absence of any evidence that [son] was a resident of [mother/policyholder]'s household" where son stayed at mother's house around one night every six weeks and otherwise lived with father); *cf. Ind. Farmers Mut. Ins. Gp. v. Blaskie*, 727 N.E.2d 13, 17–18 (Ind.Ct.App.2000) (directing summary judgment that adult son on leave from military was not resident of parents' household while visiting parents, having access to their vehicles, and being "free to come and go as he pleased"). Accordingly, the trial court properly granted GEICO summary judgment.

### C. Indiana or Oklahoma Policy

Quiring argues that the designated evidence reveals a genuine issue of fact as to whether the Johnston policy is an Indiana or an Oklahoma policy, and that this issue is material because it bears on choice of law matters that dictate the amount of Quiring's potential recovery against GEICO. *See* Appellants' Brief at 24. Particularly, Quiring argues that Indiana and Oklahoma law differ on the validity of anti-stacking provisions and set-off provisions in automobile insurance policies. However, because of our conclusion above that, as a matter of law, Quiring is not a resident of Johnston's household and therefore cannot recover under the Johnston policy, issues that bear on the amount Quiring could have recovered if she were a resident, are immaterial. Thus, there is no issue of *material* fact, and we need not opine on whether the trial court correctly concluded that, as a matter of law, the Johnston policy was an Indiana policy.

### III. Denial of Continuance

Quiring argues the trial court erred when it denied her motion for a continuance of the summary judgment hearing in order to conduct discovery. A trial court's ruling on such a motion is reviewed for an abuse of discretion. *See Erwin v. Roe*, 928 N.E.2d 609, 614 (Ind.Ct. App.2010). Indiana Trial Rule 56(C) provides a thirty-day time limit for a non-moving party to respond to a motion for summary judgment. If the non-moving party needs further time for discovery:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

T.R. 56(F). Similarly, "[f]or cause found, the [trial] Court may alter any time limit set forth in [Rule 56] upon motion made within the applicable time limit." T.R. 56(I). Our supreme court has stated "[i]t is generally improper for a court to grant summary judgment while reasonable discovery requests that bear on issues mate-

rial to the motion are still pending." *Boggs*, 730 N.E.2d at 698. To establish that a trial court abused its discretion in denying a motion for continuance or enlargement of time, the appealing party must show both that good cause existed to grant the motion and that it was prejudiced by the denial. *Erwin*, 928 N.E.2d at 614.

Quiring argues further discovery was needed on the facts of if and when the Johnston policy was converted from an Oklahoma to an Indiana policy. Specifically, in her motion for continuance, Quiring requested time to obtain (a) the original Oklahoma policy issued to Johnston before her move to Indiana; (b) documentation that GEICO claimed existed to prove Johnston was aware of the conversion of the policy to an Indiana policy; (c) recorded telephone conversations between Johnston and GEICO representatives; and (d) the deposition of Vickie Mercer, GEICO underwriting employee, who executed an affidavit of her personal knowledge of the policy conversion. GEICO replies that Quiring's motion for continuance was properly denied because it was made outside the thirty-day time limit provided by Trial Rule 56. However, GEICO's argument as to timing misses the mark because Quiring's response in opposition to summary judgment, which was timely filed thirty days after GEICO's summary judgment motion, explicitly requested a stay of the trial court's ruling on summary judgment and included an affidavit of counsel with supporting reasons.

■ We conclude that we need not decide whether the trial court abused its discretion in denying Quiring's motion for a continuance. The only issue as to which Quiring requested additional time for discovery was whether the Johnston policy was an Indiana or an Oklahoma policy. As explained above, that issue is immaterial in light of our conclusion that the trial court properly granted summary judgment that Quiring was not a resident of Johnston's household. Thus, whether Quiring should have been allowed further discovery regarding the policy conversion from Oklahoma to Indiana is now moot, as no relief at this juncture could affect the outcome. *See Roark v. Roark*, 551 N.E.2d 865, 867 (Ind.Ct.App.1990) (noting an issue is moot when, on appeal, no effective relief can be granted). Accordingly, we need not address this issue further.

### Conclusion

The trial court did not abuse its discretion by denying Quiring's motion to dismiss or stay the declaratory judgment action in view of the pending Oklahoma lawsuit. Further, there is no genuine issue of material fact and GEICO is entitled to judgment as a matter of law that Quiring was not a resident of Johnston's household and therefore is not insured under the Johnston policy. The trial court's grant of summary judgment to GEICO is affirmed.

Affirmed.

NAJAM, J., and CRONE, J., concur.